Frank S. Hedin (Pro Hac Vice Application Pending)
Arun G. Ravindran (Pro Hac Vice Application Pending)
**HEDIN HALL LLP**
1395 Brickell Avenue, Suite 1140
Miami, Florida 33131
Tel: 305.357.2107
Fax: 305.200.8801
fhedin@hedinhall.com
aravindran@hedinhall.com

DAVID W. SCOFIELD - 4140
**PETERS | SCOFIELD**
*A Professional Corporation*
7430 Creek Road, Suite 303
Sandy, Utah 84093-6160
Telephone:     (801) 858-3402
Email:           dws@psplawyers.com
Facsimile:     (801) 912-0320

Attorney for Plaintiff and the Putative Class

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| JIM CURRY, ET. AL.,<br> Plaintiffs,<br><br>v.<br><br>MRS. FIELDS GIFTS,<br><br> Defendant. | **OPPOSITION TO DEFENDANT'S MOTION TO DISMISS (Doc. No. 14)**<br><br>Case No. 2:22-cv-00651-JNP-DPB<br>District Judge Jill N. Parrish<br>Magistrate Judge Dustin B. Pead |

## Table of Contents

I.     INTRODUCTION ..................................................................................................... 1

II.    Plaintiffs' Allegations ............................................................................................ 2

III.   The NISNPIA ......................................................................................................... 3

IV.    ARGUMENT .......................................................................................................... 3

   I.    NISNPIA's Class Action Bar Directly Collides with Rule 23 ............................ 5

   II.   Applying Rule 23 in this Case Would not Abridge, Enlarge, or Modify and of NISNPIA's Substantive Rights or Remedies so as to Violate the Rules Enabling Act ................................ 9

V.     CONCLUSION ...................................................................................................... 20

## Table of Authorities

**Cases**

*Abbas v. Foreign Policy Group, LLC*, 783 F.3d 1328, 1337 (2015) ............................................ 14

*Burlington N. R. Co. v. Woods*, 480 U.S. 1 (1987) ............................................. 13, 15

*Califano v. Yamasaki*, 442 U.S. 682, 701 (1979) ......................................................... 12

*Callegari v. Blendtec, Inc.*, No. 18-CV-308, 2018 WL 5808805 (D. Utah Nov. 6, 2018) ......... 2, 7

*Compare In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, 355 F. Supp. 3d
    145, 156 (E.D.N.Y. 2018) ............................................................................ 18

*Deposit Guar. National Bank v. Roper*, 445 U.S. 326, 332 (1980) ............................................ 13

*Fullmer v. A-1 Collection Agency, LLC*, No. 4:20-CV-00143-DN-PK, 2022 WL 1538675, at *3
    (D. Utah May 16, 2022) ................................................................................. 8

*Gandy v. RWLS, LLC*, 308 F. Supp. 3d 1220, 1226 (D.N.M. 2018) ..................................... 11, 22

*Hanna v. Plumer*, 380 U.S. 460, 463-64 (1965) ................................................. 11, 13

*In re Grand Jury Proceedings*, 616 F.3d 1186, 1197 (10th Cir. 2010) ....................................... 15

*In re Santa Fe Nat. Tobacco Co. Mktg. & Sales Pracs. & Prod. Liab. Litig.*, 288 F. Supp. 3d
    1087, 1254 (D.N.M. 2017) .......................................................................... 8

*In re Target Corp. Data Sec. Breach Litig.*, 66 F. Supp. 3d 1154, 1165 (D. Minn. 2014)........... 19

*Johnson v. Blendtec*, 1:19-cv-00083-JNP (D. Utah, Aug. 1, 2019) Dkt. 19, 20, 24, 28................. 9

*Johnson v. Blendtec, Inc.*, 500 F. Supp. 3d 1271 (D. Utah 2020)............................................. 7, 17

*Lisk v. Lumber One Wood Preserving, LLC*, 792 F.3d 1331, 1337 (11th Cir. 2015)....... 19, 20, 21

*Lisk v. Lumber Wood Preserving, LLC*, 993 F. Supp. 1376 (ND. Ala. 2014) ............................. 19

*Los Lobos Renewable Power, LLC v. Americulture, Inc.,* 885 F.3d 659 (10th Cir. 2018)..... 12, 19

*Marion Energy, Inc. v. KFJ Ranch Partnership*, 267 P.3d 863, 866 (Utah 2011) ..................... 18

*Parisi v. Goldman, Sachs & Co.,* 710 F.3d 483, 488 (2d Cir. 2013) ........................................... 13

*Parrish v. Volkswagen Grp. of Am., Inc.*, 463 F. Supp. 3d 1043, 1061–62 (C.D. Cal. 2020) ........ 9

*Payne v. Tri-State CareFlight, LLC*, 328 F.R.D. 601, 644 (D.N.M. 2018)................................. 22

*Roberts v. C.R. England*, 321 F. Supp. 3d 1251 (D. Utah 2018)........................................... 21, 22

*Roberts v. C.R. England, Inc.*, 321 F. Supp. 3d 1251, 1254 (D. Utah 2018).............................. 10

Royalty Network, Inc. v. Harris, 756 F.3d 1351, 1361 (11th Cir. 2014)..................................... 14

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 130 S. Ct. 1431, 176 L.
Ed. 2d 311 (2010) ............................................................................................. 1, 2, 3, 5

*Sibbach v. Wilson & Co., Inc.*, 312 U.S. 1 (1941) ...................................................................... 13

*Silver v. Stripe, Inc.*, No. 4:20-CV-08196-YGR, 2021 WL 3191752, at *1 (N.D. Cal. July 28,
2021) ................................................................................................................ 2, 7, 24

*Smith-Brown v. Ulta Beauty, Inc.,* 2019 WL 932022 at *13-14 (N.D. Ill. Feb. 26, 2019).......... 22

*Stein v. Regions Morgan Keegan Select High Income Fund, Inc.*, 821 F.3d 780, 794 (6th Cir.
2016) ............................................................................................................................. 14

*Stender v. Archstone-Smith Operating Tr.*, 958 F.3d 938, 947 (10th Cir. 2020).......................... 5

*Suchanek v. Sturm Foods, Inc.*, 311 F.R.D. 239, 263 (S.D. Ill. 2015).................................... 18, 19

*Wilson v. Volkswagen Grp. of Am., Inc.*, No. 17-23033-CIV, 2018 WL 4623539, at *12 (S.D. Fla. Sept. 26, 2018) ........................................................................................................... 10

*Wilson v. Volkswagen Grp. of Am., Inc.*, No. 17-23033-CIV, 2018 WL 4623539, at *13 (S.D. Fla. Sept. 26, 2018) ........................................................................................................... 19

**Statutes**

Alabama's Deceptive Trade Practices Act ........................................................................... 16

New Mexico's anti-SLAPP statute ................................................................................. 9, 15

Rules Enabling Act, 28 U.S.C. § 2072 ...................................................................... 1, 2, 9, 10

Utah Code Ann. § 13-11-19(4)(a) ......................................................................................... 7

Utah Code Ann. § 13-37 ......................................................................................................... 1

Utah Code Ann. § 13-37-202(1) ............................................................................................ 3

Utah Code Ann. §13-37-203 ................................................................................... 3, 4, 8, 20

Utah Code Ann. § 13-37-203(3) .................................................................................. passim

Utah Consumer Sales Practices Act ..................................................................................... 6

Utah's Notice of Intent to Sell Nonpublic Personal Information Act ................................ 1, 3

**Rules**

Fed. R. Civ. P. 12(b)(1) ......................................................................................................... 1

Fed. R. Civ. P. 23 ......................................................................................................... passim

Fed. R. Civ. P. 23(a) ............................................................................................................... 1

Fed. R. Civ. P. 23(b) ............................................................................................................... 1

Fed. R. Civ. P. 23(c)(2)(B) ................................................................................................... 17

N.Y. C.P.L.R. 901(b) ....................................................................................................... 5, 16

**Other Authorities**

7A Charles Alan Wright et al., Federal Practice and Procedure § 1758 (3d ed. 2017) ................ 14

Newberg on Class Actions § 7:2 (5th ed. 2016) ......................................................................... 11

# I.     **INTRODUCTION**

The sole ground of Mrs. Fields Gifts' ("Mrs. Fields") Motion to Dismiss (Doc. No. 14) ("the Motion", cited herein as "Mot.") is that Plaintiffs cannot bring their claim under Utah's Notice of Intent to Sell Nonpublic Personal Information Act, Utah Code Ann. § 13-37 (the "NISNPIA"), as a class action because the statute prohibits class actions, and that therefore, the Court must dismiss the action for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). Mrs. Fields is wrong about the application of NISNPIA's class action bar in federal court.  Under *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 130 S. Ct. 1431, 176 L. Ed. 2d 311 (2010) (cited herein as "*Shady Grove*") state law class action bars like the one in NISNPIA are preempted before federal courts sitting in diversity.  Like all procedure in the federal courts, class action practice is regulated under the Federal Rules of Civil Procedures, not state procedural law.  Rule 23 explicitly allows for actions to be brought and maintained as class actions if Rule 23(a)'s numerosity, commonality, typicality, and adequacy prerequisites are met and if the action fits into an appropriate Rule 23(b) category.

Defendant all but ignores *Shady Grove* and the raft of corresponding authority applying *Shady Grove* to invalidate class action bars under state law.  Instead, the Motion relies on a pair of unavailing district court cases, *Silver v. Stripe, Inc.*, No. 4:20-CV-08196-YGR, 2021 WL 3191752, at *1 (N.D. Cal. July 28, 2021)  and *Callegari v. Blendtec, Inc.*, No. 18-CV-308, 2018 WL 5808805 (D. Utah Nov. 6, 2018)  that do not address the impact of *Shady Grove* on NISNPIA, or do not address NISNPIA at all, and in any event, were both wrongly decided.  While the Utah legislature may properly legislate procedure in Utah's state courts it cannot dictate procedure in federal courts, which is the sole province of Congress.  Under the Rules Enabling Act, 28 U.S.C. § 2072, Congress has delegated that power to the federal judiciary, which in turn promulgated the Federal Rules of

Civil Procedure.  As explained in *Shady Grove*, plaintiffs are entitled to use any procedural vehicle provided for in the Federal Rules of Civil Procedure including Rule 23, regardless of a state legislature's determinations concerning state court procedures.  Under *Shady Grove*, this Court is bound to apply the Federal Rules of Civil Procedure, not Utah's procedural rule barring class actions under NISNPIA because under the Rules Enabling Act federal procedural rules trump state law unless to so would abridge, enlarge, or modify state law rights or remedies.  To decline a federal rule's primacy over a state rule requires a finding that the state rule is substantive.   "The bar for finding an Enabling Act problem is a high one."  *Shady Grove*, 559 U.S. at 432 (Steven, J. concurring).   Courts may only refuse to apply Rule 23 when there is "little doubt" that applying a federal rule would alter a substantive state right.  *Id.*  Here, the Motion offers no good reason for why NISNPIA's class action bar is substantive.  The Motion is squarely at odds with the rule announced in *Shady Grove* and should be denied.

## II.      PLAINTIFFS' ALLEGATIONS

Plaintiffs are consumers from various states who during the relevant statutory period purchased cookies and other snack foods from the Mrs. Fields catalogue.  (Compl. ¶¶ 8-14).  Mrs. Fields maintains a "vast database of its customers' Private Purchase Information", obtained through customers' transactions with Mrs. Fields, which includes name, gender, address, fact that the individual is a Mrs. Fields customer, in addition to other information such as the amount of Mrs. Fields products purchased.  (Compl. ¶5, ¶ 46).  To supplement its revenues Mrs. Fields enhances its mailing lists with other information about its customers obtained from data aggregators and sells and rents its mailing lists to other data industry participants, other consumer-facing businesses, and non-commercial entities.  (Compl.  ¶47).  Mrs. Fields did not notify Plaintiffs or the class members of its disclosure to third parties of its customers' Private Purchase

Information, much less obtain its customers' prior consent before making such disclosures. (Comp. ¶ 50). Plaintiffs bring this action "on behalf of all persons in the United States who, at any point during the applicable statutory period, had their Private Purchase Information, obtained by Defendant on or after January 1, 2004 as a result of a consumer transaction, disclosed to third parties by Mrs. Fields." (Comp. ¶ 54).

## III.    THE NISNPIA

The NISNPIA prohibits the disclosure of nonpublic personal information that a commercial entity obtains through a consumer transaction if the commercial entity fails to comply with the statute's specific notice requirements before disclosing that information. Utah Code Ann. § 13-37-202(1) *et. seq.* Section 13-37-203 titled "Liability" contains the class action bar provision relevant to the Motion and is as follows:

**13-37-203. Liability.**

(1) A person may bring an action against a commercial entity in a court of competent jurisdiction in this state if:

    (a) the commercial entity enters into a consumer transaction with that person;

    (b) as a result of the consumer transaction described in Subsection (1)(a), the commercial entity obtains nonpublic personal information concerning that person; and

    (c) the commercial entity violates this chapter.

(2) In an action brought under Subsection (1), a commercial entity that violates this chapter is liable to the person who brings the action for:

    (a) $500 for each time the commercial entity fails to provide the notice required by this section in relation to the nonpublic personal information of the person who brings the action; and

    (b) court costs.

(3) A person may not bring a class action under this chapter.

## IV.    ARGUMENT

In *Shady Grove*, the Supreme Court held that a New York statutory provision restricting class actions was preempted by Rule 23 because the statutory restriction directly conflicted with

Rule 23, and because Rule 23 did not "abridge, enlarge or modify any substantive right" afforded under New York law. *Shady Grove,* 559 U.S. at 393.

Justice Stevens's concurrence in *Shady Grove*, which controls in the Tenth Circuit, *see Stender v. Archstone-Smith Operating Tr.*, 958 F.3d 938, 947 (10th Cir. 2020), explained that even where a state rule appears procedural in form, a court should nonetheless pay attention to whether the state rule actually implicates substantive rights and remedies. 559 U.S. at 416-437 (Steven, J. concurring). Justice Stevens agreed that the New York class action bar was in direct conflict with Fed. R. Civ. P. 23, and, based on the lack of a clear legislative statement that the class action bar was imposed to impact remedies rather than procedure, among other factors, determined the bar was non-substantive, and therefore preempted by Rule 23 in a federal diversity action. *Id.*

The same two-step analysis applied in Justice Stevens's concurrence compels the same outcome in this case. *See Shady Grove*, 559 U.S. at 421. At the first step, the inquiry is whether Rule 23 "answers the question in dispute," or stated differently, "whether the scope of [Rule 23 is sufficiently broad to control the issue before the court, thereby leaving no room for the operation of seemingly conflicting state law" set forth in Utah Code Ann. § 13-37-203(3). *Id.* (internal quotations and citations omitted). And if there is such a "direct collision" between Rule 23 and NSNPIA's class action bar, the inquiry at the second step is whether applying Rule 23 would "effectively abridge[], enlarge[], or modif[y] a state-created right or remedy" in violation of the Rules Enabling Act. *Shady Grove*, 559 U.S. at 394.

As explained below, NSNPIA's class action bar directly collides with Rule 23, and applying Rule 23 in this case would not violate the Rules Enabling Act. Accordingly, Rule 23, not the NSNIPIA's class action bar, applies.

I.      **NISNPIA's Class Action Bar Directly Collides with Rule 23**

First, Rule 23 and NISNPIA's class action bar are in direct conflict with one another – Rule 23 allows class actions, NISNPIA bars them.

Like in *Shady Grove*, the question in dispute here is whether this suit may proceed as a class action – and, like in *Shady Grove*, the answer is "yes" under Rule 23 but "no" under the state statutory provision at issue.  As the majority opinion in *Shady Grove* explains, Rule 23 "[b]y its terms … creates a ***categorical rule*** entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action…Thus, Rule 23 provides a one-size-fits-all formula for deciding the class-action question…Because § 901(b) attempts to answer the same question—*i.e.,* it states that Shady Grove's suit 'may *not* be maintained as a class action' because of the relief it seeks— it cannot apply in diversity suits unless Rule 23 is ultra vires."[1]  *Id.* at 398-99 (emphasis added). The Tenth Circuit has framed the question as whether the federal rule and state rule "can be reconciled."  *Stender*, 958 F.3d at 947 (10th Cir. 2020).  Here, Rule 23, which categorically allows class actions when certain prerequisites are met, cannot be reconciled with the NSNIPIA's complete prohibition on class actions under the statute. The two are fundamentally at odds.

Defendant nevertheless contends that that Rule 23 can be reconciled with NISNPIA's class action bar (Mot. at 5-6), and in support cites to two readily distinguishable decisions in *Callegari*

---

[1]      Justice Stevens's concurrence made the same observation, noting: "When the District Court in the case before us was asked to certify a class action, Federal Rule of Civil Procedure 23 squarely governed the determination whether the court  should do so. That is the explicit function of Rule 23. Rule 23, therefore, must apply unless its application would abridge, enlarge, or modify New York rights or remedies." *Shady Grove,* 559 U.S. 393, 429-30 (2010).

*v. Blendtec, Inc.*, No. 18-CV-308, 2018 WL 5808805 (D. Utah Nov. 6, 2018) and *Johnson v.*

*Blendtec, Inc.*, 500 F. Supp. 3d 1271 (D. Utah 2020), both of which applied a statutory restriction

on class actions found in the Utah Consumer Sales Practices Act ("UCSPA") over Rule 23 in

federal diversity actions.[2]  With due respect to the *Callegari* court, that case was wrongly decided,

and in *Johnson*, neither Rule 23 preemption nor *Shady Grove's* impact were before the Court at

all.  But in any event, these cases are inapposite given the significant differences between the

pertinent provisions of the UCSPA at issue there and of the NISNPIA at issue here.

The court in *Callegari* reasoned that Rule 23 and the UCSPA's provision barring class

actions for monetary damages (except for such actions that are brought against a defendant for

"violat[ion] [of] an existing administrative rule, court order, or consent decree") are not in direct

conflict with one another because "the language of Rule 23 may be read to be permissive: 'a class

action *may* be maintained[,]'" and that "Rule 23 does not explicitly set forth exclusive procedural

requirements for maintaining a class action." *Callegari*, 2018 WL 5808805, at \*4 (quoting Fed. R.

Civ. P. 23).[3]  And the though the court in *Johnson* cited *Callegari*, its citation did not concern

*Callegari's* Rule 23 preemption analysis. *Johnson*, 500 F. Supp. at 1284.  *Johnson* cited *Callegari*

---

[2] Tellingly, the Motion's first argument that a district court has already found class claims are not cognizable in federal court under NISNPIA is undeveloped beyond the Motion's citation to *Silver v. Stripe, Inc.*, No. 4:20-cv-08196-YGR, 2021 WL 3191752 (N.D. Cal. July 28, 2021).  (Mot. at 4).  This is because the Court in *Silver* did not engage in any discussion of *Shady Grove* at all and in fact appears not have recognized the importance of the *Shady Grove* decision or the preemption problem.  The court *sua sponte* raised NISNPIA's class action bar in its order on the motion to dismiss as neither party raised it in the motion to dismiss briefing.  *See Silver*, No. 4:20-cv-08196-YGR, Dkt. 21, 27, 29.

[3] The court in *Fullmer v. A-1 Collection Agency, LLC*, No. 4:20-CV-00143-DN-PK, 2022 WL 1538675, at \*3 (D. Utah May 16, 2022) (cited by Mot. at 5), citing *Callegari* also reached the same erroneous conclusion on the incorrect belief that Rule 23 was permissive based on the Rule's use of the word "may".  *See also*, *In re Santa Fe Nat. Tobacco Co. Mktg. & Sales Pracs. & Prod. Liab. Litig.*, 288 F. Supp. 3d 1087, 1254 (D.N.M. 2017) (also failing to apply *Shady Grove's* majority rule and thus finding Rule 23 is permissive on same grounds).

for *Callegari's* holding regarding the pleading requirements for alleging bait and switch tactics under the UCSPA's class action limitation provision, which is of no moment here. *Id.* Though not mentioned in the Motion, in *Johnson* the Court did not have the benefit of adversarial briefing on the issue of Rule 23 preemption under *Shady Grove*, and the opinion should not and cannot be read as this Court's prior endorsement of the primacy of a state class action limitation over Rule 23. *Id.*; *See Johnson v. Blendtec*, 1:19-cv-00083-JNP (D. Utah, Aug. 1, 2019) Dkt. 19, 20, 24, 28. As to *Callegari's* Rule 23 preemption analysis, the *Callegari* court simply got it wrong on this issue. The majority in *Shady* Grove explicitly foreclosed the notion that Rule 23 is permissive and can thus coexist with a state statutory bar on class actions:

> Allstate asserts that Rule 23 neither explicitly nor implicitly empowers a federal court "to certify a class in each and every case" where the Rule's criteria are met. But that is *exactly* what Rule 23 does: It says that if the prescribed preconditions are satisfied "[a] class action *may be maintained*" (emphasis added)—not "*a class action may be permitted.*" Courts do not maintain actions; litigants do. The discretion suggested by Rule 23's "may" is discretion residing in the plaintiff: He may bring his claim in a class action if he wishes. And like the rest of the Federal Rules of Civil Procedure, Rule 23 *automatically* applies "in all civil actions and proceedings in the United States District courts"

559 U.S. 393, 399–400, 130 S. Ct. 1431, 1438, 176 L. Ed. 2d 311 (2010) (internal citations omitted). Indeed, numerous better-reasoned decisions have held that, pursuant to the Supreme Court's controlling decision in *Shady Grove*, Rule 23 directly conflicts with and thus preempts the UCSPA's provision restricting class actions. *See Parrish v. Volkswagen Grp. of Am., Inc.*, 463 F. Supp. 3d 1043, 1061–62 (C.D. Cal. 2020) (finding Rule 23 directly conflicts with the UCSPA's class action limitation at § 13-11-19(4)(a) and rejecting *Callegari's* reasoning based on the above-quoted excerpt from *Shady Grove*); *Wilson v. Volkswagen Grp. of Am., Inc.*, No. 17-23033-CIV, 2018 WL 4623539, at *12 (S.D. Fla. Sept. 26, 2018) (same).

But even if the UCSPA's provision restricting class actions does not directly conflict with Rule 23, there can be no doubt that the NISNPIA's outright bar on class actions does. Whereas the UCSPA bars all class actions for monetary damages other than those brought against a defendant for "violat[ion] [of] an existing administrative rule, court order, or consent decree," *Johnson,* 500 F. Supp. 3d at 1282, the NISNPIA includes a provision barring class actions across-the-board. Utah Code Ann. § 13-37-203(3) ("A person may not bring a class action under this chapter"). NISNPIA's class action bar runs headlong into Rule 23, in precisely the same way that § 901(b) ran headlong into Rule 23 in *Shady Grove*. *See Shady Grove,* 559 U.S. at 398-99 (stating that Rule 23 "[b]y its terms … creates a ***categorical rule*** entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action…Thus, Rule 23 provides a one-size-fits-all formula for deciding the class-action question…Because § 901(b) attempts to answer the same question—*i.e.,* it states that Shady Grove's suit 'may *not* be maintained as a class action' because of the relief it seeks—it cannot apply in diversity suits unless Rule 23 is ultra vires"). On this point Justice Stevens specifically joined in agreement with the four Justices in the plurality meaning that the unequivocal majority view of the Supreme Court was that Rule 23 and New York's class action bar were irreconcilable. *See id.*, (Stevens, J. concurring in Part IIA of the opinion of the Court); *Roberts v. C.R. England, Inc.*, 321 F. Supp. 3d 1251, 1254 (D. Utah 2018) (Justice Stevens's joining in parts I and IIA of the decision means those parts of the opinion also control); *Gandy v. RWLS, LLC*, 308 F. Supp. 3d 1220, 1226 (D.N.M. 2018) (same). Likewise, Rule 23 and Section 13-37-203(3) are at odds with no wiggle room, so a direct collision exists.

II.     **Applying Rule 23 in this Case Would not Abridge, Enlarge, or Modify and of NISNPIA's Substantive Rights or Remedies so as to Violate the Rules Enabling Act**

Because there is a direct conflict between Rule 23 and NISNPIA's class action bar, the second step of the analysis is to determine if applying Rule 23 would "effectively abridge[], enlarge[], or modif[y] a state-created right or remedy" in violation of the Rules Enabling Act. *See Shady Grove*, 559 U.S. at 398 (citing *Hanna v. Plumer*, 380 U.S. 460, 463-64 (1965)).[4] The answer to this question is clearly no.

---

[4]     Mrs. Fields contends the Court should apply the *Erie* standard at the second step of the analysis based on its belief that there is no conflict between Rule 23 and NISNPIA's class action bar.  (Mot. at 6 (citing to *Callegari*, where the Court applied the *Erie* rule to analyze the UCSPA's class action limitation).) But where, as here, there is a direct conflict between Rule 23 and the pertinent state statutory provision, Judge Stevens's controlling concurrence in *Shady Grove* is clear that the Rules Enabling Act test must be applied at the second step of the analysis.

But even if the Court were to somehow conclude that there is no conflict between 13-37-203(3)'s prohibition on class actions and the right to bring a class action in federal court under Rule 23, 13-37-203(3)'s bar on class actions still should not be applied in this action. If no such conflict is found, the Court must then "wade into *Erie's* murky waters" and make a "relatively unguided *Erie* choice" regarding whether Section 13-37-203(3)'s prohibition constitutes a substantive rule of decision that governs the merits of Plaintiffs' claims under the NISNPIA or a procedural rule that would not be applicable in federal court. *See Shady Grove*, 559 U.S. at 398; *Hanna*, 380 U.S. at 471. And because Section 13-37-203(3) does not limit the scope of any remedy that could be recovered by any individual member of the putative class, but instead only restricts the method by which an injured class member can recover such a remedy, Section 13-37-203(3)'s prohibition is a procedural rule that should not be applied in this federal action.

The Tenth Circuit's decision in *Los Lobos Renewable Power, LLC v. Americulture, Inc.,* 885 F.3d 659 (10th Cir. 2018) is instructive. In that case, the court considered whether New Mexico's anti-SLAPP statute, which established expedited procedures for resolving early motions to dismiss certain civil lawsuits that the statute defined as "baseless," should be applied in federal court under the *Erie* doctrine. *Id.* at 668. The court held that because "[t]he plain language of the New Mexico anti-SLAPP statute reveals the law is nothing more than a *procedural* mechanism designed to expedite the disposal of frivolous lawsuits aimed at threatening free speech rights," parties in a federal diversity action brought in New Mexico did not have the right to invoke the statute's expedited procedures in federal court. Important to the court's decision was the fact that the New Mexico statute at issue set forth "no rule(s) of substantive law." *Id.* at 669. Thus, the statute did not "alter the rules of decision by which a court will adjudicate the merits of the complaint," but instead "alter[ed] only how the claims are processed." *Id.* at 670 (citing *Shady Grove*, 559 U.S. at 407).

As a threshold matter, Rule 23 is merely a claims processing device – a procedural mechanism for resolving similar claims in an efficient manner – and applying it in this case plainly would not (and indeed could not) "abridge, enlarge, or modify" any rights or remedies created by the NISNPIA. *See Shady Grove*, 559 U.S. at 408 ("[W]e think it obvious that rules allowing multiple claims (and claims by or against multiple parties) to be litigated together [] neither change plaintiffs' separate entitlements to relief nor abridge defendants' rights; they alter only how the claims are processed. . . . A class action, no less than traditional joinder (of which it is a species), merely enables a federal court to adjudicate claims of multiple parties at once, instead of in separate suits."); *Califano v. Yamasaki*, 442 U.S. 682, 701 (1979) ("Rule 23 provides a procedure by which the court may exercise [] jurisdiction over [] various individual claims in a single proceeding."); *Deposit Guar. National Bank v. Roper*, 445 U.S. 326, 332 (1980) (explaining that the "right to employ Rule 23 is a procedural right only, ancillary to the litigation of substantive claims"); *see also Parisi v. Goldman, Sachs & Co.,* 710 F.3d 483, 488 (2d Cir. 2013) (noting that the availability of a class action mechanism under Rule 23 cannot create a right to sue but rather "*presupposes* the existence of a claim").

While a majority of the *Shady Grove* Court agreed that application of Rule 23 in the context of that case was consistent with the mandate of the Rules Enabling Act, they disagreed on the reason why. Four members of the Court (Justices Scalia, Roberts, Thomas, and Sotomayor), relying on prior precedent, agreed that determining whether Rule 23 complied with the Rules Enabling Act was an objective inquiry that depended only on the language of the federal rule itself. *Id.* at 406-410 (relying on *Sibbach v. Wilson & Co., Inc.*, 312 U.S. 1 (1941); *Hanna v. Plumer*, 380 U.S. 460 (1965); and *Burlington N. R. Co. v. Woods*, 480 U.S. 1 (1987)). Under the plurality's reasoning, the only question was whether Rule 23 "really regulates procedure." *Id.* at

409-10 (quoting *Sibbach v. Wilson*, 312 U.S. 1, 13-14 (1941)). The "substantive nature of New York's law, or its substantive purpose, *ma[de] no difference.*" *Id.* at 409 (emphasis in original). If the rule governs "only 'the manner and the means' by which the litigants' rights are 'enforced,' it is valid; if it alters 'the rules of decision by which the court will adjudicate those rights,' it is not." *Id.* at 407 (citations omitted).

Concluding that Rule 23 regulated procedure, as opposed to substance, the plurality held that Rule 23 was authorized by the Rules Enabling Act and would, therefore, preempt application of the New York statute in federal court. In addition, because the plurality's approach was not dependent on the substance or purpose of the state law, its holding applies any time a state law conflicts with Rule 23.

In a lone concurring opinion, Justice Stevens agreed that Rule 23 complied with the Rules Enabling Act and preempted the New York statute, but for different reasons than those relied on by the plurality.[5] Purporting to distinguish the precedent relied on by the plurality, Justice Stevens

---

[5] Plaintiffs contend that the Rules Enabling Act analysis set forth in the plurality opinion joined by Justices Scalia, Roberts, Thomas, and Sotomayor should be applied in this case. As then Judge Kavanaugh explained in *Abbas v. Foreign Policy Group, LLC*, 783 F.3d 1328, 1337 (2015), neither the plurality opinion or Justice Stevens' concurrence "can be considered the *Marks* middle ground or narrowest opinion, as the four Justices in dissent simply did not address the issue" of how the Rules Enabling Act analysis should be applied. Accordingly, the precedent established in *Sibbach*, which is consistent with the plurality's approach in *Shady Grove*, should control. *See id.* Because the Court in *Shady Grove* has already concluded that Rule 23 "really regulates procedure," no further inquiry into the nature of Section 13-37-203(3)'s ban on class actions is necessary. Other federal circuit courts have similarly concluded that the framework set forth by the *Shady Grove* plurality is controlling. *See, e.g.*, *Stein v. Regions Morgan Keegan Select High Income Fund, Inc.*, 821 F.3d 780, 794 (6th Cir. 2016) (quoting *Shady Grove* plurality) ("[T]he Rule must really regulate procedure ...."); *Royalty Network, Inc. v. Harris*, 756 F.3d 1351, 1361 (11th Cir. 2014) (quoting *Shady Grove* plurality) ("If we were to adopt the suggested criterion of the importance of the alleged right we should invite endless litigation and confusion worse confounded. The test must be whether a rule really regulates procedure."). *See also 7A Charles Alan Wright et al., Federal Practice and Procedure* § 1758 (3d ed. 2017) ("[I]t is now clear that Rule 23 controls whether a class action may be maintained, regardless of a conflicting state law."); William B. Rubenstein, *Newberg on Class Actions* § 7:2 (5th ed. 2016) ("As Rule 23 is

reasoned that when resolving a conflict between a federal rule and a state law, determining whether the federal rule complies with the Rules Enabling Act turns on whether the specific application of the rule "effectively abridges, enlarges, or modifies a state created right or remedy." *Id.* at 422 (Stevens, J., concurring). Under this approach, a "federal rule … cannot govern a particular case in which the rule would displace a state law that is procedural in the ordinary use of the term but is so intertwined with a state right or remedy that it functions to define the scope of the state-created right." *Id.* at 423. Under Justice Stevens's more nuanced approach, determining whether a specific application of a federal rule complies with the Rules Enabling Act depends on the nature and purpose of the state law and whether the state law functions to create a substantive right. Thus, for Justice Stevens, the question was not whether a state law takes a form that is traditionally described as substantive or procedural, but instead whether "the state law actually is part of a State's framework of substantive rights or remedies." *Id.* at 419.

Despite this difference in approach, Justice Stevens agreed that "the bar for finding an Enabling Act problem is a high one."[6] *Id.* at 432. "The mere possibility that a federal rule would alter a state-created right is not sufficient. There must be little doubt." *Id.* Applying this standard,

---

a *procedural* rule, rather than one affecting the substance or merits of the litigation, it will govern the certification decision; this is so even in diversity actions in which the forum state's class certification rules may differ.").

[6] Indeed, precedent demonstrates that there is a strong presumption in favor of finding federal rules valid under the Enabling Act. *See Burlington N. R.R. Co. v. Woods,* 480 U.S. 1, 6 (1987) (citing *Hanna*, 380 U.S. at 471) ("[T]he study and approval given each proposed Rule by the Advisory Committee, the Judicial Conference, and this Court, and the statutory requirement that the Rule be reported to Congress for a period of review before taking effect, … gives the Rules presumptive validity under both the constitutional and statutory constraints."); *In re Grand Jury Proceedings*, 616 F.3d 1186, 1197 (10th Cir. 2010) (citing *Burlington N. R.R. Co.*, 480 U.S. at 6) ("[W]e emphasize that the Federal Rules of Appellate Procedure are entitled to a presumption that they comply with the Rules Enabling Act."). This presumption is so strong that, "[t]o date, the Supreme Court never has held any of the rules invalid, despite several attacks against a number of them." 4 Charles Alan Wright et al., *Federal Practice and Procedure: Federal Rules of Civil Procedure* (hereinafter "Fed. Prac. & Proc. Civ.") § 1030 (4th ed. 2017).

Justice Stevens concluded that application of Rule 23 in *Shady Grove* did not "abridge, enlarge or modify New York rights or remedies." *Id.* at 430-36.

While Justice Stevens did not provide clear guidance on how to apply his more nuanced approach to identifying a Rules Enabling Act violation, his analysis of the New York statute at issue provides insight into how he likely intended his approach to proceed. First, it is evident from Justice Stevens' decision that determining whether a state law is substantive or procedural for purposes of the Enabling Act depends on context, such that "what is procedural in one context may be substantive in another." *Id.* at 428 n.13. Second, Justice Stevens explained that while a state law that appears procedural "in the ordinary sense" may define a state substantive right or remedy in some contexts, "[t]he mere fact that a state law is designed as a procedural rule suggests it reflects a judgment about how state courts ought to operate and not a judgment about the scope of state-created rights and remedies." *Id.* at 432. In other words, there is a presumption that a state law that is "designed as a procedural rule" is intended to regulate procedure rather than substance. Third, the intent of the legislature is relevant, but the mere fact that a state law was adopted for some policy reason does not make the law substantive for purposes of Enabling Act analysis. *Id.* at 433-34 ("In evaluating … legislative history, it is necessary to distinguish between procedural rules adopted for *some* policy reason and seemingly procedural rules that are intimately bound up in the scope of a substantive right or remedy. Although almost every rule is adopted for some reason and some effect on the outcome of litigation, not every state rule 'defines the dimensions of a claim itself.'") (emphasis in original).

In the end, Justice Stevens concluded that there simply was not enough evidence that the New York statute at issue was adopted for the purpose of defining substantive state rights or remedies and, therefore, application of Federal Rule 23 would not be a violation of the Enabling

Act. He based this conclusion on the fact that the defendant's arguments in favor of applying the New York statute rested "on extensive speculation about what the New York Legislature had in mind when it created § 901(b)." *Id.* at 436. Because it was plausible that the New York statute merely reflected "a classically procedural calibration of making it easier to litigate claims in New York courts … only when it is necessary to do so, and not making it *too* easy when the class tool is not required," Justice Stevens determined that "Congress' decision that Rule 23 governs class certification in federal courts" should be given respect. *Id.* at 436-37. "In order to displace a federal rule, there must be more than just a possibility that the state rule is different than it appears." *Id.* at 437.

In the Motion, Defendant fails to articulate any reason why this Court should conclude that Section 13-37-203(3) "functions to define the scope of the state-created rights." *Shady* Grove, 559 U.S. at 423. Instead, it simply cites to a handful of decisions that came out the way it likes and asks the Court to blindly follow them without conducting its own analysis. For instance, Defendant merely parrots this Court's observation of well-established Utah law in *Johnson v. Blendtec, Inc.*, 500 F. Supp. 3d 1271, 1284 (D. Utah 2020) (Parrish, J.) that "[w]hen the meaning of a statute can be discerned from its language, no other interpretive tools are needed," without even attempting to explain why the plain language of the statute renders NISNPIA's class action bar substantive rather than procedural.  (*See* Mot. at 5-10).[7]  In fact, Rule 23 preemption was not even raised by the parties to *Johnson*, so the decision provides no support for Defendant's contention that NISNPIA's class action bar is substantive. The Court should not "employ a sort of herd mentality and mindlessly follow the decisions of other district courts without reexamining the legal

---

[7] *Johnson* cited the Utah Supreme Court's decision in *Marion Energy, Inc. v. KFJ Ranch Partnership*,  267 P.3d 863, 866 (Utah 2011).

issues." *Suchanek v. Sturm Foods, Inc.*, 311 F.R.D. 239, 263 (S.D. Ill. 2015) (rejecting argument that state class action restrictions should be applied based on decisions from other courts that relied solely on the location of the restriction within the state's code).

Nor does Defendant explain why NISNPIA's class-action bar reflects a substantive legislative judgment rather than a procedural limitation on the processing of claims. The reality is that even if the NISNPIA's class action bar is held inapplicable in this action, the substance of the rights and remedies under the statute will not change one bit. *Compare In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, 355 F. Supp. 3d 145, 156 (E.D.N.Y. 2018) ("Here, Hawaii's law regulates only when private plaintiffs can litigate the case. It does not alter the substantive elements of plaintiffs' claims. Most importantly, it is surely no more substantive than the statute at issue in *Shady Grove*, which barred class action suits for an entire category of claims.") *with Wilson v. Volkswagen Grp. of Am., Inc.*, No. 17-23033-CIV, 2018 WL 4623539, at *13 (S.D. Fla. Sept. 26, 2018) ("Rather than foreclosing the opportunity to pursue a class action at all, the Ohio statute, instead, defines substantive rights: what a consumer needs to prove in order to succeed on a claim. Thus, to allow such a claim to proceed without requiring the plaintiff to properly allege notice under the statute, would "abridge, enlarge or modify [a] substantive right."); *see also Los Lobos Renewable Power, LLC v. Americulture, Inc*, 885 F.3d 659, 670 (10th Cir. 2018) quoting *Shady Grove*, 559 U.S. at 408 (Scalia, J., plurality opinion) ("The New Mexico [anti-SLAPP] statute does not alter the rules of decision by which a court will adjudicate the merits of the complaint. The statute "alter[s] only how the claims are processed.").[8]  Indeed, if 5,000

---

[8] Defendant quotes a 2014 district court decision stating that "[m]ost courts that have evaluated state consumer-protection laws that conflict with Rule 23 have determined that Rule 23 cannot be applied to otherwise prohibited class actions, because the class-action prohibition defines the scope of the state-created right, namely the right to bring a lawsuit for violations of the state's consumer-protection law."  (Mot. at 5-6 quoting *In re Target Corp. Data Sec. Breach Litig.*, 66 F. Supp. 3d

members of a potential class action were all entitled to statutory damages under Section 113-37-203, the scope of Defendant's liability would not be changed one bit if the actions were brought individually as opposed to on a class action.

Notably, Defendant's only explanation for why Rule 23 preempted the class-action bar in N.Y. C.P.L.R. 901(b) in *Shady Grove* but does not preempt the NISNPIA's class action bar is that the class action bar here appears in the NISNPIA itself, rather than in a separate, more general section of the state's civil code (such as where N.Y. C.P.L.R. 901(b), the provision at issue in *Shady Grove*, appeared in the New York civil code). The argument is unpersuasive. *Shady Grove* specifically rejected the ill-founded idea that the location of a provision prohibiting class actions in a state's civil code somehow confirms the substantive nature of the rights or remedies implicated by it, as numerous recent decisions addressing the issue have explained.

For instance, in *Lisk v. Lumber One Wood Preserving, LLC*, 792 F.3d 1331 (11th Cir. 2015), the question was whether a ban on class actions seeking statutory remedies under the Alabama Deceptive Trade Practices Act ("ADTPA"), a consumer protection statute similar to the UCSPA, was applicable in federal court or preempted by Rule 23. *Id.* at 1334. The trial court, citing decisions from several other federal district courts, dismissed the ADTPA claims, purporting

---

1154, 1165 (D. Minn. 2014)). *In re Target Corp.* cites just four cases in support of its sweeping statement. These cases concerned Alabama, South Carolina, Kentucky, and Tennessee consumer protection statutes. One of these, *Lisk v. Lumber Wood Preserving, LLC*, 993 F. Supp. 1376 (ND. Ala. 2014) was reversed on appeal by the Eleventh Circuit, which held that Alabama's Deceptive Trade Practices Act statute was preempted by Rule 23. *Lisk v. Lumber One Wood Preserving, LLC*, 792 F.3d 1331, 1337 (11th Cir. 2015); *see also Suchanek v. Sturm Foods, Inc*., 311 F.R.D. 239, 262 (S.D. Ill. 2015) (applying *Shady Grove* post-*In re Target Corp.* and finding Rule 23 preempts Alabama, Tennessee, and South Carolina consumer protection statutes' bar on class action suits). As set forth herein, since 2014 numerous federal courts have declined to apply state statutory class action bars akin to NISNPIA's.

to distinguish *Shady Grove* on the grounds that, unlike the New York statute at issue in *Shady Grove* but like the Utah statute at issue in this case, the ADTPA's ban on class actions was part of the same statute that created the statutory penalties being sought rather than as part of the state's general procedural code. *Id.* at 1336. Reversing, the Eleventh Circuit explained:

> [H]ow a state chooses to organize its statutes affects the analysis not at all. Surely the New York legislature could not change the *Shady Grove* holding simply by reenacting the same provision as part of the statutory-interest statute. Surely an identical ban on statutory-interest class actions adopted by another state would not override Rule 23 just because it was placed in a different part of the state's code. The goal of national uniformity that underlies the federal rules ought not be sacrificed on so insubstantial a ground. And more importantly, ***the question whether a federal rule abridges, enlarges, or modifies a substantive right turns on matters of substance—not on the placement of a statute within a state code.***

*Lisk*, 792 F.3d 1331, 1336 (emphasis added).

Unpersuasive arguments similar to those relied on by the district court in *Lisk*, and several other federal district courts, were also recently raised before this District in *Roberts v. C.R. England*, 321 F. Supp. 3d 1251 (D. Utah 2018). In *Roberts*, the defendants argued that the opt-in class action notice requirements set forth in the UCSPA, rather than the opt-out procedures set forth in Rule 23(c)(2)(B), should apply. *Id.* at 1254. The defendants in *Roberts* attempted to distinguish *Shady Grove* on the grounds that the UCSPA's opt-in notice requirements were located within the statute that created the right of action giving rise to the plaintiffs' claim. *Id.* at 1259. The defendants cited two decisions from other district courts that had purported to distinguish *Shady Grove* under similar circumstances. *Id.* Rejecting this argument, Judge Shelby correctly concluded that Rule 23 preempted the UCSPA's opt-in notice requirements, explaining that "[t]he location of a law within state statutory codes can be useful in discerning the legislature's intent, but cannot in itself prove the law's procedural or substantive nature." *Id.* at 1258. Finding the district court decisions relied on by the defendants unpersuasive, the Court stated:

> [T]he courts in *Driscoll* and *Harris* relied heavily on the fact that the opt-in requirements in those cases, like here, were located within the text of the statutes creating the underlying rights of action. For the reasons discussed above, and considering Justice Stevens's merely passing mention of the New York statute's location in the state code, ***the significant weight placed on this single factor appears misplaced***. More to the point, those cases contain relatively limited analyses under what this court construes as a relatively complex *Shady Grove* decision.

*Id.* at 1259 (emphasis added, internal citations omitted). *See also Smith-Brown v. Ulta Beauty, Inc.,* 2019 WL 932022 at *13-14 (N.D. Ill. Feb. 26, 2019) (unpublished) (citing *Lisk*, 792 F.3d at 1336) ("This Court agrees with those decisions holding that the fact that a class action bar is included within a consumer protection statute does not make it any more substantive than if it were found instead among the state's rules of procedure."); *Payne v. Tri-State CareFlight, LLC*, 328 F.R.D. 601, 644 (D.N.M. 2018) (citing *Roberts*, 321 F. Supp. 3d at 1258); *Gandy v. RWLS, LLC*, 308 F. Supp. 3d 1220, 1229 (D.N.M. 2018) (also citing *Roberts*).

Defendant also fails to present any evidence demonstrating that the Utah Legislature intended Section 13-37-203(3)'s prohibition on class actions to be anything more than "a classically procedural calibration of making it easier to litigate claims in [Utah] courts … only when it is necessary to do so, and not making it *too* easy when the class tool is not required." *See id.,* 559 U.S. at 436-37. Although legislative history may potentially bear on whether a statutory provision is procedural or substantive, Defendant has not even attempted to show that the Utah legislature intended for the NISNPIA's class action bar to affect substantive rights or remedies.

In *Shady Grove*, the dissent cited excerpts from N.Y. C.P.L.R. 901's legislative history to advance the view that Section 901's class action bar was akin to a damages cap and therefore substantive law. *Id.* at 445 (Ginsberg, J. dissenting).  For example, the dissent raised industry

groups' advocacy efforts to defeat the New York Class action statute's passage and the governor's signing statement that the law was a "controlled remedy" as evidence that Section 901(b) was specifically intended to control excessive damages.   (*Id.*).  Even considering these data points, Justice Stevens did not agree that the statute's legislative history was sufficiently clear, *e.g*, that there was "little doubt" (*Id.* at 432) that the class action bar was substantive, stating:

> The legislative history, moreover, does not clearly describe a judgment that § 901(b) would operate as a limitation on New York's statutory damages. In evaluating that legislative history, it is necessary to distinguish between procedural rules adopted for *some* policy reason and seemingly procedural rules that are intimately bound up in the scope of a substantive right or remedy. Although almost every rule is adopted for some reason and has some effect on the outcome of litigation, not every state rule "defines the dimensions of [a] claim itself[.]"…

*Id.* at 434 (Stevens, J. concurring) (internal citations omitted).[9]

So in *Shady Grove*, even though some legislative history existed to support the idea that Section 901(b) reflected a substantive legislative determination, it still fell far short of clearing the "high bar" necessary to show that there was an "Enabling Act problem" under Justice Stevens's analysis. Here, there is literally no legislative history supporting the idea that § 13-37-203(3) reflects a substantive legislative determination concerning rights or remedies under the statute. Certainly, the Motion presents nothing in that vein.  One of the essential points of Justice Stevens's *Shady Grove* concurrence was the courts must rely on "text and context" (*id.* at 426) and should not speculate about a whether a statute reflects substantive or procedural concerns.  *See Id.*  at 436 (Stevens, J concurring) ("Although one can argue that class certification would enlarge New York's "limited" damages remedy, such arguments rest on extensive speculation about what the

---

[9] Justice Scalia, for the plurality deemed Section 901's legislative history "pretty sparse" evidence of the New York legislature's intent and basically dismissed it altogether.  *See Id.* at 403 (Scalia, J. plurality opinion).

New York Legislature had in mind when it created § 901(b)").  The Motion does not provide the Court with any valid reason, textual, historical, or otherwise, to deem NISNPIA's bar substantive.

Finally, the Motion cites to an out-of-circuit district court decision in *Silver v. Stripe, Inc.*, No. 4:20-CV-08196-YGR, 2021 WL 3191752, at *1 (N.D. Cal. July 28, 2021) (cited by Mot. at 4, 8), where the court applied NISNPIA's class action prohibition in federal court.  But the defendant in that case did not even raise NISNPIA's class action prohibition much less move to dismiss based upon it. Rather, the court in *Silver* raised the issue *sua sponte* without the benefit of adversarial briefing, without citing to *Shady Grove*, and without even addressing whether Rule 23 preempted the statutory class action prohibition – and, as a result, got it wrong for all of the reasons previously discussed.

Rule 23, not Utah Code Ann. § 13-37-203(3), controls in this case, and the Motion should be denied.

## V.  CONCLUSION

For the foregoing reasons, the Motion should be denied.

**DATED** this 26th day of January, 2023.

PETERS | SCOFIELD
*A Professional Corporation*


  /s/ David W. Scofield
DAVID W. SCOFIELD
Attorney for Plaintiff and the Putative Class

20

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that he caused the foregoing **OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** to be filed with the Court through its CM/ECF system, this 26th day of January, 2023, which will serve copies hereof electronically on the following counsel registered for CM/ECF notification:

Milo Steven Marsden-- marsden.steve@dorsey.com

Maryann Bauhs-- bauhs.maryann@dorsey.com


/s/ David W. Scofield