Frank S. Hedin (Pro Hac Vice Application Pending)
Arun G. Ravindran (~~Admitted~~ Pro Hac Vice ~~Application pending~~)
**HEDIN HALL LLP**
1395 Brickell Avenue, Suite 1140
Miami, Florida 33131
Tel: 305.357.2107
Fax: 305.200.8801
fhedin@hedinhall.com
aravindran@hedinhall.com

DAVID W. SCOFIELD – 4140
**PETERS | SCOFIELD**
*A Professional Corporation*
7430 Creek Road, Suite 303
Sandy, Utah 84093-6160
Telephone:    (801) 322-2002
Facsimile:    (801) 912-0320
E-Mail:        dws@psplawyers.com

Attorneys for ~~Plaintiff~~Plaintiffs and the Putative Class

**UNITED STATES DISTRICT COURT
DISTRICT OF UTAH**

| | |
|---|---|
| ~~JIM CURRY, AUTUMN MORGAN, KISHONA SMITH, MONIQUA WALKER, STUART ROGOFF, ALYSSA MOSER, and THOMAS MONACO~~ JIM CURRY; STUART ROGOFF; MONIQUE BROOKINS; VALERIE GRUENKE; EMMA MENDOZA; ALEXIS BELL; DAWN WILKINS; CARLOS ROMERO; KATHI CASSI; TAMARA JOHNSON; VERONICA CALLAHAN; AMANDA PARKS; MARSHONNTRI AUSTIN; LINDA MICHAUD; and LOIS COLEMAN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MRS. FIELDS GIFTS, INC.,<br><br>Defendant. | **FIRST AMENDED** CLASS ACTION COMPLAINT<br><br>~~JURY TRIAL DEMANDED~~<br><br>Case No. 2:22-cv-00651-~~DAO~~JNP-DBP<br>~~Honorable Daphne A. Oberg~~ |

# EXHIBIT A

|  | District Judge Jill N. Parrish<br>Magistrate Judge Dustin B. Pead<br><br>**(JURY TRIAL DEMANDED)** |
|---|---|

~~Plaintiffs Jim Curry, Autumn Morgan, Kishona Smith, Moniqua Walker, Stuart Rogoff, Alyssa Moser, and Thomas Monaco~~Plaintiffs Jim Curry ("Plaintiff Curry"), Stuart Rogoff ("Plaintiff Rogoff"), Monique Brookins ("Plaintiff Brookins"), Valerie Gruenke ("Plaintiff Gruenke"), Emma Mendoza ("Plaintiff Mendoza"), Alexis Bell ("Plaintiff Bell"), Dawn Wilkins ("Plaintiff Wilkins"), Carlos Romero ("Plaintiff Romero"), Kathi Cassi ("Plaintiff Cassi"), Tamara Johnson ("Plaintiff Johnson"), Veronica Callahan ("Plaintiff Callahan"), Amanda Parks ("Plaintiff Parks"), Marshonntri Austin ("Plaintiff Austin"), Linda Michaud ("Plaintiff Michaud"), and Lois Coleman ("Plaintiff Coleman"), individually and on behalf of all others similarly situated, make the following allegations pursuant to the investigation of counsel and based upon information and belief, except as to allegations specifically pertaining to themselves and their counsel, which are based on personal knowledge.

## **INTRODUCTION**

1.        Defendant Mrs. Fields Gifts, Inc. ("Mrs. Fields") rented, sold, exchanged, and/or otherwise disclosed for compensation detailed information about Plaintiffs' purchases of Mrs. Fields's products to data aggregators, data appenders, data cooperatives, and list brokers, among others, which in turn disclosed Plaintiffs' information to aggressive advertisers, political organizations, and non-profit companies.  As a result, Plaintiffs have received a barrage of unwanted junk mail.  By renting, selling, exchanging, and/or otherwise disclosing for

compensation Plaintiffs' Private Purchase Information (defined below), without providing Plaintiffs prior notice of these disclosures, Mrs. Fields violated Utah's Notice of Intent to Sell Nonpublic Personal Information Act, Utah Code Ann. § 13-37 (the "NISNPIA").

2.        Documented evidence confirms these facts.   For example, ~~a~~one list broker, Nextmark, Inc. ("Nextmark~~"),~~"), maintains a website on which Mrs. Fields, either directly or through one or more third parties acting on its behalf, offers ~~to provide renters~~ access to the ~~mailing list titled~~ "MRS FIELDS GIFTS INC CATALOG BUYERS Mailing List", which ~~contains~~as of April 2022 contained the Private Purchase Information of 284,780 of Mrs. Fields's recent U.S. purchasers, at a base price of "$110.00/M [per thousand]," (i.e., 11 cents apiece), as shown in the screenshot below:



*See* **Exhibit A** hereto.

3.       By renting, selling, exchanging, or otherwise disclosing for compensation the Private Purchase Information of its customers to third parties, without providing its customers prior notice of such practices, Mrs. Fields violated the NISNPIA.  Subsection 2 of the NISNPIA provides:

> A commercial entity may not disclose nonpublic personal information that the commercial entity obtained on or after January 1, 2004, as a result of a consumer transaction if the commercial entity fails to comply with [the provisions requiring that prior notice of such disclosures be provided to the consumer, as set forth in] Section 13-37-201.

Utah Code Ann. § 13-37-202(1).

4.       Accordingly, Plaintiffs bring this First Amended Class Action Complaint against Mrs. Fields for its intentional, systematic, and unlawful disclosures of its customers' Private Purchase Informationconduct in violation of the NISNPIA.

### NATURE OF THE CASE

5.       To supplement its revenues, Mrs. Fields rents, sells, or and sells (for money), exchanges (for other valuable consumer data), and otherwise discloses for compensation its customers' information—including their full names, home addresses, and fact that the listed individuals are Mrs. Fields catalog customers (collectively "Private Purchase Information"), as well as myriad other categories of individualized data and demographic information such as gender and the dollar amount of the products purchased—to data aggregators, data appenders, data

4

cooperatives, and other third parties without the written consent of its customers.

6.    Mrs. Fields's ~~disclosure~~disclosures of Private Purchase Information and other individualized information is not only unlawful, but also dangerous because it allows for the targeting of particularly vulnerable members of society.

7.    While Mrs. Fields profits handsomely from the unauthorized rentals, sales, exchanges, and~~/or~~ other compensation-driven disclosures of its customers' Private Purchase Information ~~and other individualized information~~, it does so at the expense of its customers' statutory privacy rights (afforded by the NISNPIA) because Mrs. Fields does not provide any ~~prior~~ notice of such disclosures to its customers (much less obtain their consent) prior to disclosing their Private Purchase Information to third parties for compensation.

**PARTIES**

**I.    Plaintiff ~~Jim~~ Curry**

8.    Plaintiff Curry is a natural person and citizen and resident of, and domiciled in, Los Angeles, California. ~~In~~

9.    On or ~~about 2018 and 2019~~after January 1, 2004, Plaintiff Curry purchased from Mrs. Fields cookies and other snack-food products ~~from Mrs. Fields through a~~and consumer goods, which had been offered for sale by Mrs. Fields in its catalog~~.~~— and on its website (among other sales channels).

10.    Prior to and at the time Plaintiff Curry made his purchases, Mrs. Fields did not notify Plaintiff Curry that it discloses the Private Purchase Information of its customers, and Plaintiff Curry has never authorized Mrs. Fields to do so. Furthermore, Plaintiff Curry was never provided any written notice that Mrs. Fields rents, sells, exchanges, or otherwise discloses for

compensation its customers' Private Purchase Information, or any means of opting out. ~~Since~~ ~~making a purchase from Mrs. Fields, Mrs. Fields~~

11.    After such purchases were made, and during the applicable statutory period, Mrs. Fields disclosed, without providing Plaintiff Curry the prior notice required by Utah Code Ann. § 13-37-201, Plaintiff Curry's Private Purchase Information to data aggregators, data appenders, and/or data cooperatives, who then supplemented that information with data from their own files.

~~8.~~12.    Moreover, during that same period, Mrs. Fields rented, sold, exchanged, or otherwise disclosed for compensation ~~mailing~~customer lists containing Plaintiff Curry's Private Purchase Information to third parties seeking to contact Mrs. Fields's customers for their own business ends, without providing Plaintiff Curry the prior notice required by Utah Code Ann. § 13-37-201 of such rentals, sales, exchanges, and/or other disclosures of his information for compensation.

~~9.    Plaintiff Autumn Morgan is a natural person and citizen and resident of, and domiciled in, Vancouver, Washington.  In the relevant statutory period, Plaintiff Morgan purchased cookies and other snack food products from Mrs. Fields through a Mrs. Fields catalog.  Prior to and at the time Plaintiff Morgan made her purchases, Mrs. Fields did not notify Plaintiff Morgan that it discloses the Private Purchase Information of its customers, and Plaintiff Morgan has never authorized Mrs. Fields to do so.  Furthermore, Plaintiff Morgan was never provided any written notice that Mrs. Fields rents, sells, or otherwise discloses for compensation its customers' Private Purchase Information, or any means of opting out.  Since making~~

a purchase from Mrs. Fields, Mrs. Fields disclosed, without providing Plaintiff Morgan the prior notice required by Utah Code Ann. § 13-37-201, Plaintiff Morgan's Private Purchase Information to data aggregators, data appenders, and/or data cooperatives, who then supplemented that information with data from their own files. Moreover, during that same period, Mrs. Fields rented, sold, or otherwise disclosed for compensation mailing lists containing Plaintiff Morgan's Private Purchase Information to third parties seeking to contact Mrs. Fields's customers for their own business ends, without providing Plaintiff Morgan the prior notice required by Utah Code Ann. § 13-37-201 of such rentals, sales, and/or other disclosures of her information for compensation.

10. Plaintiff Kishona Smith is a natural person and citizen and resident of, and domiciled in, Hephzibah, Georgia. In the relevant statutory period, Plaintiff Smith purchased cookies and other snack food products from Mrs. Fields through a Mrs. Fields catalog. Prior to and at the time Plaintiff Smith made her purchases, Mrs. Fields did not notify Plaintiff Smith that it discloses the Private Purchase Information of its customers, and Plaintiff Smith has never authorized Mrs. Fields to do so. Furthermore, Plaintiff Smith was never provided any written notice that Mrs. Fields rents, sells, or otherwise discloses for compensation its customers' Private Purchase Information, or any means of opting out. Since making a purchase from Mrs. Fields, Mrs. Fields disclosed, without providing Plaintiff Smith the prior

7

notice required by Utah Code Ann. § 13-37-201, Plaintiff Smith's Private Purchase Information to data aggregators, data appenders, and/or data cooperatives, who then supplemented that information with data from their own files. Moreover, during that same period, Mrs. Fields rented, sold, or otherwise disclosed for compensation mailing lists containing Plaintiff Smith's Private Purchase Information to third parties seeking to contact Mrs. Fields's customers for their own business ends, without providing Plaintiff Smith the prior notice required by Utah Code Ann. § 13-37-201 of such rentals, sales, and/or other disclosures of her information for compensation.

11.    Plaintiff Moniqua Walker is a natural person and citizen and resident of, and domiciled in, Gary, Indiana. In the relevant statutory period, Plaintiff Walker purchased cookies and other snack food products from Mrs. Fields through a Mrs. Fields catalog. Prior to and at the time Plaintiff Walker made her purchases, Mrs. Fields did not notify Plaintiff Walker that it discloses the Private Purchase Information of its customers, and Plaintiff Walker has never authorized Mrs. Fields to do so. Furthermore, Plaintiff Walker was never provided any written notice that Mrs. Fields rents, sells, or otherwise discloses for compensation its customers' Private Purchase Information, or any means of opting out. Since making a purchase from Mrs. Fields, Mrs. Fields disclosed, without providing Plaintiff Walker the prior notice required by Utah Code Ann. § 13-37-201, Plaintiff Walker's Private Purchase

~~Information to data aggregators, data appenders, and/or data cooperatives, who then supplemented that information with data from their own files. Moreover, during that same period, Mrs. Fields rented, sold, or otherwise disclosed for compensation mailing lists containing Plaintiff Walker's Private Purchase Information to third parties seeking to contact Mrs. Fields's customers for their own business ends, without providing Plaintiff Walker the prior notice required by Utah Code Ann. § 13-37-201 of such rentals, sales, and/or other disclosures of her information for compensation.~~

**II.    ~~Plaintiff Stuart~~<u>Plaintiff Rogoff</u>**

<u>13.    Plaintiff</u> Rogoff is a natural person and citizen and resident of, and domiciled in, Santa Clara, California.  ~~In the relevant statutory period~~

<u>14.    On or after January 1, 2004</u>, Plaintiff Rogoff purchased <u>from Mrs. Fields</u> cookies and other snack-food products ~~from Mrs. Fields through a~~<u>and consumer goods, which had been offered for sale by</u> Mrs. Fields <u>in its</u> catalog~~.~~<u>and on its website (among other sales channels).</u>

<u>15.</u>    Prior to and at the time Plaintiff Rogoff made his purchases, Mrs. Fields did not notify Plaintiff Rogoff that it discloses the Private Purchase Information of its customers, and Plaintiff Rogoff has never authorized Mrs. Fields to do so.  Furthermore, Plaintiff Rogoff was never provided any written notice that Mrs. Fields rents, sells, <u>exchanges,</u> or otherwise discloses for compensation its customers' Private Purchase Information, or any means of opting out.  ~~Since making a purchase from Mrs. Fields, Mrs. Fields~~

<u>16.    After such purchases were made, and during the applicable statutory period, Mrs.</u>

9

Fields disclosed, without providing Plaintiff Rogoff the prior notice required by Utah Code Ann. § 13-37-201, Plaintiff Rogoff's Private Purchase Information to data aggregators, data appenders, and/or data cooperatives, who then supplemented that information with data from their own files.

17.     Moreover, during that same period, Mrs. Fields rented, sold, exchanged, or otherwise disclosed for compensation ~~mailing~~customer lists containing Plaintiff Rogoff's Private Purchase Information to third parties seeking to contact Mrs. Fields's customers for their own business ends, without providing Plaintiff Rogoff the prior notice required by Utah Code Ann. § 13-37-201 of such rentals, sales, exchanges, and/or other disclosures of his information for compensation.

### III.     Plaintiff Brookins

18.     Plaintiff Brookins is a natural person and citizen and resident of, and domiciled in, Redford, Michigan.

19.     On or after January 1, 2004, Plaintiff Brookins purchased from Mrs. Fields cookies and other snack-food products and consumer goods, which had been offered for sale by Mrs. Fields in its catalog and on its website (among other sales channels).

20.     Prior to and at the time Plaintiff Brookins made her purchases, Mrs. Fields did not notify Plaintiff Brookins that it discloses the Private Purchase Information of its customers, and Plaintiff Brookins has never authorized Mrs. Fields to do so.  Furthermore, Plaintiff Brookins was never provided any written notice that Mrs. Fields rents, sells, exchanges, or otherwise discloses for compensation its customers' Private Purchase Information, or any means of opting out.

21.     After such purchases were made, and during the applicable statutory period, Mrs. Fields disclosed, without providing Plaintiff Brookins the prior notice required by Utah Code Ann. § 13-37-201, Plaintiff Brookins's Private Purchase Information to data aggregators, data

appenders, and/or data cooperatives, who then supplemented that information with data from their own files.

22.    Moreover, during that same period, Mrs. Fields rented, sold, exchanged, or otherwise disclosed for compensation customer lists containing Plaintiff Brookins's Private Purchase Information to third parties seeking to contact Mrs. Fields's customers for their own business ends, without providing Plaintiff Brookins the prior notice required by Utah Code Ann. § 13-37-201 of such rentals, sales, exchanges, and/or other disclosures of her information for compensation.

**IV.    Plaintiff Gruenke**

23.    Plaintiff Gruenke is a natural person and citizen and resident of, and domiciled in, Morrisville, Pennsylvania.

24.    On or after January 1, 2004, Plaintiff Gruenke purchased from Mrs. Fields cookies and other snack-food products and consumer goods, which had been offered for sale by Mrs. Fields in its catalog and on its website (among other sales channels).

25.    Prior to and at the time Plaintiff Gruenke made her purchases, Mrs. Fields did not notify Plaintiff Gruenke that it discloses the Private Purchase Information of its customers, and Plaintiff Gruenke has never authorized Mrs. Fields to do so.  Furthermore, Plaintiff Gruenke was never provided any written notice that Mrs. Fields rents, sells, exchanges, or otherwise discloses for compensation its customers' Private Purchase Information, or any means of opting out.

26.    After such purchases were made, and during the applicable statutory period, Mrs. Fields disclosed, without providing Plaintiff Gruenke the prior notice required by Utah Code Ann. § 13-37-201, Plaintiff Gruenke's Private Purchase Information to data aggregators, data appenders, and/or data cooperatives, who then supplemented that information with data from their own files.

11

27.    Moreover, during that same period, Mrs. Fields rented, sold, exchanged, or otherwise disclosed for compensation customer lists containing Plaintiff Gruenke's Private Purchase Information to third parties seeking to contact Mrs. Fields's customers for their own business ends, without providing Plaintiff Gruenke the prior notice required by Utah Code Ann. § 13-37-201 of such rentals, sales, exchanges, and/or other disclosures of her information for compensation.

**V.    Plaintiff Mendoza**

28.    Plaintiff Mendoza is a natural person and citizen and resident of, and domiciled in, La Porte, Texas.

29.    On or after January 1, 2004, Plaintiff Mendoza purchased from Mrs. Fields cookies and other snack-food products and consumer goods, which had been offered for sale by Mrs. Fields in its catalog and on its website (among other sales channels).

30.    Prior to and at the time Plaintiff Mendoza made her purchases, Mrs. Fields did not notify Plaintiff Mendoza that it discloses the Private Purchase Information of its customers, and Plaintiff Mendoza has never authorized Mrs. Fields to do so.  Furthermore, Plaintiff Mendoza was never provided any written notice that Mrs. Fields rents, sells, exchanges, or otherwise discloses for compensation its customers' Private Purchase Information, or any means of opting out.

31.    After such purchases were made, and during the applicable statutory period, Mrs. Fields disclosed, without providing Plaintiff Mendoza the prior notice required by Utah Code Ann. § 13-37-201, Plaintiff Mendoza's Private Purchase Information to data aggregators, data appenders, and/or data cooperatives, who then supplemented that information with data from their own files.

~~12.~~32. Moreover, during that same period, Mrs. Fields rented, sold, exchanged, or

otherwise disclosed for compensation customer lists containing Plaintiff Mendoza's Private Purchase Information to third parties seeking to contact Mrs. Fields's customers for their own business ends, without providing Plaintiff ~~Rogoff~~Mendoza the prior notice required by Utah Code Ann. § 13-37-201 of such rentals, sales, exchanges, and/or other disclosures of ~~his~~her information for compensation.

**VI.    Plaintiff ~~Alyssa Moser~~Bell**

33.    Plaintiff Bell is a natural person and citizen and resident of, and domiciled in, ~~Redlands~~Lancaster, California. ~~In the relevant statutory period~~

34.    On or after January 1, 2004, Plaintiff ~~Moser~~Bell purchased from Mrs. Fields cookies and other snack-food products ~~from Mrs. Fields through a~~ and consumer goods, which had been offered for sale by Mrs. Fields in its catalog~~—~~ and on its website (among other sales channels).

35.    Prior to and at the time Plaintiff ~~Moser~~Bell made ~~her~~his purchases, Mrs. Fields did not notify Plaintiff ~~Moser~~Bell that it discloses the Private Purchase Information of its customers, and Plaintiff ~~Moser~~Bell has never authorized Mrs. Fields to do so.  Furthermore, Plaintiff ~~Moser~~Bell was never provided any written notice that Mrs. Fields rents, sells, exchanges, or otherwise discloses for compensation its customers' Private Purchase Information, or any means of opting out. ~~Since making a purchase from Mrs. Fields, Mrs. Fields~~

36.    After such purchases were made, and during the applicable statutory period, Mrs. Fields disclosed, without providing Plaintiff ~~Moser~~Bell the prior notice required by Utah Code Ann. § 13-37-201, Plaintiff ~~Moser's~~Bell's Private Purchase Information to data aggregators, data

appenders, and/or data cooperatives, who then supplemented that information with data from their own files.

13.37. Moreover, during that same period, Mrs. Fields rented, sold, exchanged, or otherwise disclosed for compensation mailingcustomer lists containing Plaintiff Moser's Bell's Private Purchase Information to third parties seeking to contact Mrs. Fields's customers for their own business ends, without providing Plaintiff MoserBell the prior notice required by Utah Code Ann. § 13-37-201 of such rentals, sales, exchanges, and/or other disclosures of herhis information for compensation.

## VII.    Plaintiff Thomas MonacoWilkins

38.    Plaintiff Wilkins is a natural person and citizen and resident of, and domiciled in, Modesto, California.  In the relevant statutory periodCenterline, Michigan.

39.    On or after January 1, 2004, Plaintiff MonacoWilkins purchased from Mrs. Fields cookies and other snack-food products fromand consumer goods, which had been offered for sale by Mrs. Fields through a Mrs. Fieldsin its catalog.  and on its website (among other sales channels).

40.    Prior to and at the time Plaintiff MonacoWilkins made hisher purchases, Mrs. Fields did not notify Plaintiff MonacoWilkins that it discloses the Private Purchase Information of its customers, and Plaintiff MonacoWilkins has never authorized Mrs. Fields to do so. Furthermore, Plaintiff MonacoWilkins was never provided any written notice that Mrs. Fields rents, sells, exchanges, or otherwise discloses for compensation its customers' Private Purchase Information, or any means of opting out.  Since making a purchase from Mrs. Fields, Mrs.

14

Fields

41.    After such purchases were made, and during the applicable statutory period, Mrs. Fields disclosed, without providing Plaintiff ~~Monaco~~Wilkins the prior notice required by Utah Code Ann. § 13-37-201, Plaintiff ~~Monaco's~~Wilkins's Private Purchase Information to data aggregators, data appenders, and/or data cooperatives, who then supplemented that information with data from their own files.

~~14.~~42. Moreover, during that same period, Mrs. Fields rented, sold, exchanged, or otherwise disclosed for compensation ~~mailing~~customer lists containing Plaintiff ~~Monaco's~~Wilkins's Private Purchase Information to third parties seeking to contact Mrs. Fields's customers for their own business ends, without providing Plaintiff ~~Monaco~~Wilkins the prior notice required by Utah Code Ann. § 13-37-201 of such rentals, sales, exchanges, and/or other disclosures of ~~his~~her information for compensation.

**VIII.   Plaintiff Romero**

43.    Plaintiff Romero is a natural person and citizen and resident of, and domiciled in, Los Angeles, California.

44.    On or after January 1, 2004, Plaintiff Romero purchased from Mrs. Fields cookies and other snack-food products and consumer goods, which had been offered for sale by Mrs. Fields in its catalog and on its website (among other sales channels).

45.    Prior to and at the time Plaintiff Romero made his purchases, Mrs. Fields did not notify Plaintiff Romero that it discloses the Private Purchase Information of its customers, and Plaintiff Romero has never authorized Mrs. Fields to do so.  Furthermore, Plaintiff Romero was never provided any written notice that Mrs. Fields rents, sells, exchanges, or otherwise discloses

for compensation its customers' Private Purchase Information, or any means of opting out.

46.    After such purchases were made, and during the applicable statutory period, Mrs. Fields disclosed, without providing Plaintiff Romero the prior notice required by Utah Code Ann. § 13-37-201, Plaintiff Romero's Private Purchase Information to data aggregators, data appenders, and/or data cooperatives, who then supplemented that information with data from their own files.

47.    Moreover, during that same period, Mrs. Fields rented, sold, exchanged, or otherwise disclosed for compensation customer lists containing Plaintiff Romero's Private Purchase Information to third parties seeking to contact Mrs. Fields's customers for their own business ends, without providing Plaintiff Romero the prior notice required by Utah Code Ann. § 13-37-201 of such rentals, sales, exchanges, and/or other disclosures of his information for compensation.

## IX.    Plaintiff Cassi

48.    Plaintiff Cassi is a natural person and citizen and resident of, and domiciled in, Akron, Ohio.

49.    On or after January 1, 2004, Plaintiff Cassi purchased from Mrs. Fields cookies and other snack-food products and consumer goods, which had been offered for sale by Mrs. Fields in its catalog and on its website (among other sales channels).

50.    Prior to and at the time Plaintiff Cassi made her purchases, Mrs. Fields did not notify Plaintiff Cassi that it discloses the Private Purchase Information of its customers, and Plaintiff Cassi has never authorized Mrs. Fields to do so.  Furthermore, Plaintiff Cassi was never provided any written notice that Mrs. Fields rents, sells, exchanges, or otherwise discloses for compensation its customers' Private Purchase Information, or any means of opting out.

51.    After such purchases were made, and during the applicable statutory period, Mrs.

16

Fields disclosed, without providing Plaintiff Cassi the prior notice required by Utah Code Ann. § 13-37-201, Plaintiff Cassi's Private Purchase Information to data aggregators, data appenders, and/or data cooperatives, who then supplemented that information with data from their own files.

52.    Moreover, during that same period, Mrs. Fields rented, sold, exchanged, or otherwise disclosed for compensation customer lists containing Plaintiff Cassi's Private Purchase Information to third parties seeking to contact Mrs. Fields's customers for their own business ends, without providing Plaintiff Cassi the prior notice required by Utah Code Ann. § 13-37-201 of such rentals, sales, exchanges, and/or other disclosures of her information for compensation.

**X.    Plaintiff Johnson**

53.    Plaintiff Johnson is a natural person and citizen and resident of, and domiciled in, Loganville, Georgia.

54.    On or after January 1, 2004, Plaintiff Johnson purchased from Mrs. Fields cookies and other snack-food products and consumer goods, which had been offered for sale by Mrs. Fields in its catalog and on its website (among other sales channels).

55.    Prior to and at the time Plaintiff Johnson made her purchases, Mrs. Fields did not notify Plaintiff Johnson that it discloses the Private Purchase Information of its customers, and Plaintiff Johnson has never authorized Mrs. Fields to do so.  Furthermore, Plaintiff Johnson was never provided any written notice that Mrs. Fields rents, sells, exchanges, or otherwise discloses for compensation its customers' Private Purchase Information, or any means of opting out.

56.    After such purchases were made, and during the applicable statutory period, Mrs. Fields disclosed, without providing Plaintiff Johnson the prior notice required by Utah Code Ann. § 13-37-201, Plaintiff Johnson's Private Purchase Information to data aggregators, data appenders, and/or data cooperatives, who then supplemented that information with data from their own files.

17

57.    Moreover, during that same period, Mrs. Fields rented, sold, exchanged, or otherwise disclosed for compensation customer lists containing Plaintiff Johnson's Private Purchase Information to third parties seeking to contact Mrs. Fields's customers for their own business ends, without providing Plaintiff Johnson the prior notice required by Utah Code Ann. § 13-37-201 of such rentals, sales, exchanges, and/or other disclosures of her information for compensation.

**XI.    Plaintiff Callahan**

58.    Plaintiff Callahan is a natural person and citizen and resident of, and domiciled in, Canton, Ohio.

59.    On or after January 1, 2004, Plaintiff Callahan purchased from Mrs. Fields cookies and other snack-food products and consumer goods, which had been offered for sale by Mrs. Fields in its catalog and on its website (among other sales channels).

60.    Prior to and at the time Plaintiff Callahan made her purchases, Mrs. Fields did not notify Plaintiff Callahan that it discloses the Private Purchase Information of its customers, and Plaintiff Callahan has never authorized Mrs. Fields to do so.  Furthermore, Plaintiff Callahan was never provided any written notice that Mrs. Fields rents, sells, exchanges, or otherwise discloses for compensation its customers' Private Purchase Information, or any means of opting out.

61.    After such purchases were made, and during the applicable statutory period, Mrs. Fields disclosed, without providing Plaintiff Callahan the prior notice required by Utah Code Ann. § 13-37-201, Plaintiff Callahan's Private Purchase Information to data aggregators, data appenders, and/or data cooperatives, who then supplemented that information with data from their own files.

62.    Moreover, during that same period, Mrs. Fields rented, sold, exchanged, or

18

otherwise disclosed for compensation customer lists containing Plaintiff Callahan's Private Purchase Information to third parties seeking to contact Mrs. Fields's customers for their own business ends, without providing Plaintiff Callahan the prior notice required by Utah Code Ann. § 13-37-201 of such rentals, sales, exchanges, and/or other disclosures of her information for compensation.

**XII.    Plaintiff Parks**

63.    Plaintiff Parks is a natural person and citizen and resident of, and domiciled in, Upper Marlboro, Maryland.

64.    On or after January 1, 2004, Plaintiff Parks purchased from Mrs. Fields cookies and other snack-food products and consumer goods, which had been offered for sale by Mrs. Fields in its catalog and on its website (among other sales channels).

65.    Prior to and at the time Plaintiff Parks made her purchases, Mrs. Fields did not notify Plaintiff Parks that it discloses the Private Purchase Information of its customers, and Plaintiff Parks has never authorized Mrs. Fields to do so.  Furthermore, Plaintiff Parks was never provided any written notice that Mrs. Fields rents, sells, exchanges, or otherwise discloses for compensation its customers' Private Purchase Information, or any means of opting out.

66.    After such purchases were made, and during the applicable statutory period, Mrs. Fields disclosed, without providing Plaintiff Parks the prior notice required by Utah Code Ann. § 13-37-201, Plaintiff Parks's Private Purchase Information to data aggregators, data appenders, and/or data cooperatives, who then supplemented that information with data from their own files.

67.    Moreover, during that same period, Mrs. Fields rented, sold, exchanged, or otherwise disclosed for compensation customer lists containing Plaintiff Parks's Private Purchase Information to third parties seeking to contact Mrs. Fields's customers for their own business ends,

without providing Plaintiff Parks the prior notice required by Utah Code Ann. § 13-37-201 of such rentals, sales, exchanges, and/or other disclosures of her information for compensation.

### XIII.   Plaintiff Austin

68.     Plaintiff Austin is a natural person and citizen and resident of, and domiciled in, Atlanta, Georgia.

69.     On or after January 1, 2004, Plaintiff Austin purchased from Mrs. Fields cookies and other snack-food products and consumer goods, which had been offered for sale by Mrs. Fields in its catalog and on its website (among other sales channels).

70.     Prior to and at the time Plaintiff Austin made her purchases, Mrs. Fields did not notify Plaintiff Austin that it discloses the Private Purchase Information of its customers, and Plaintiff Austin has never authorized Mrs. Fields to do so.  Furthermore, Plaintiff Austin was never provided any written notice that Mrs. Fields rents, sells, exchanges, or otherwise discloses for compensation its customers' Private Purchase Information, or any means of opting out.

71.     After such purchases were made, and during the applicable statutory period, Mrs. Fields disclosed, without providing Plaintiff Austin the prior notice required by Utah Code Ann. § 13-37-201, Plaintiff Austin's Private Purchase Information to data aggregators, data appenders, and/or data cooperatives, who then supplemented that information with data from their own files.

72.     Moreover, during that same period, Mrs. Fields rented, sold, exchanged, or otherwise disclosed for compensation customer lists containing Plaintiff Austin's Private Purchase Information to third parties seeking to contact Mrs. Fields's customers for their own business ends, without providing Plaintiff Austin the prior notice required by Utah Code Ann. § 13-37-201 of such rentals, sales, exchanges, and/or other disclosures of her information for compensation.

### XIV.   Plaintiff Michaud

20

73.     Plaintiff Michaud is a natural person and citizen and resident of, and domiciled in, West Bend, Wisconsin.

74.     On or after January 1, 2004, Plaintiff Michaud purchased from Mrs. Fields cookies and other snack-food products and consumer goods, which had been offered for sale by Mrs. Fields in its catalog and on its website (among other sales channels).

75.     Prior to and at the time Plaintiff Michaud made her purchases, Mrs. Fields did not notify Plaintiff Michaud that it discloses the Private Purchase Information of its customers, and Plaintiff Michaud has never authorized Mrs. Fields to do so.  Furthermore, Plaintiff Michaud was never provided any written notice that Mrs. Fields rents, sells, exchanges, or otherwise discloses for compensation its customers' Private Purchase Information, or any means of opting out.

76.     After such purchases were made, and during the applicable statutory period, Mrs. Fields disclosed, without providing Plaintiff Michaud the prior notice required by Utah Code Ann. § 13-37-201, Plaintiff Michaud's Private Purchase Information to data aggregators, data appenders, and/or data cooperatives, who then supplemented that information with data from their own files.

77.     Moreover, during that same period, Mrs. Fields rented, sold, exchanged, or otherwise disclosed for compensation customer lists containing Plaintiff Michaud's Private Purchase Information to third parties seeking to contact Mrs. Fields's customers for their own business ends, without providing Plaintiff Michaud the prior notice required by Utah Code Ann. § 13-37-201 of such rentals, sales, exchanges, and/or other disclosures of her information for compensation.

### XV.     Plaintiff Coleman

78.     Plaintiff Coleman is a natural person and citizen and resident of, and domiciled in,

Dumas, Arkansas.

79.    On or after January 1, 2004, Plaintiff Coleman purchased from Mrs. Fields cookies and other snack-food products and consumer goods, which had been offered for sale by Mrs. Fields in its catalog and on its website (among other sales channels).

80.    Prior to and at the time Plaintiff Coleman made her purchases, Mrs. Fields did not notify Plaintiff Coleman that it discloses the Private Purchase Information of its customers, and Plaintiff Coleman has never authorized Mrs. Fields to do so.  Furthermore, Plaintiff Coleman was never provided any written notice that Mrs. Fields rents, sells, exchanges, or otherwise discloses for compensation its customers' Private Purchase Information, or any means of opting out.

81.    After such purchases were made, and during the applicable statutory period, Mrs. Fields disclosed, without providing Plaintiff Coleman the prior notice required by Utah Code Ann. § 13-37-201, Plaintiff Coleman's Private Purchase Information to data aggregators, data appenders, and/or data cooperatives, who then supplemented that information with data from their own files.

82.    Moreover, during that same period, Mrs. Fields rented, sold, exchanged, or otherwise disclosed for compensation customer lists containing Plaintiff Coleman's Private Purchase Information to third parties seeking to contact Mrs. Fields's customers for their own business ends, without providing Plaintiff Coleman the prior notice required by Utah Code Ann. § 13-37-201 of such rentals, sales, exchanges, and/or other disclosures of her information for compensation.

## XVI.    Defendant Mrs. Fields Gifts, Inc.

83.    Defendant Mrs. Fields Gifts, Inc. is a Utah corporation with its headquarters and principal place of business in Salt Lake City, Utah.  Mrs. Fields does business throughout Utah

and the entire United States.

84.    Mrs. Fields is a ~~consumer~~ snack-food company that sells advertises, offers, and sells its products ~~directly~~ and services to consumers ~~through~~ in its catalogues and on its website, among other sales ~~avenues.~~ channels.

~~15.~~

## JURISDICTION AND VENUE

~~16.~~ 85.   This Court has subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from ~~Defendant.~~ Mrs. Fields.

~~17.~~ 86.   The Court has personal jurisdiction over Mrs. Fields and venue is proper in this judicial District because ~~Defendant~~ Mrs. Fields is a domestic Utah corporation with its headquarters and principal place of business in Salt Lake City, Utah, which is located within this judicial District.

## FACTUAL BACKGROUND

### *Utah's Notice of Intent to Sell Nonpublic Personal Information Act*

~~18.~~ 87.   Pursuant to the NISNPIA, "[a] commercial entity may not disclose nonpublic personal information that the commercial entity obtained on or after January 1, 2004, as a result of a consumer transaction if the commercial entity fails to comply with Section 13-37-201." Utah Code Ann. § 13-37-202.

~~19.~~ 88.   A "commercial entity" is a person that "has an office or other place of business located in [Utah]" and "in the ordinary course of business transacts a consumer transaction in [Utah]." *Id.* § 13-37-102(2)(a).

23

~~20.~~89.   "Consumer transaction" means, *inter alia*, "a sale, lease, assignment, award by chance, or other written or oral transfer or disposition . . . of[] goods[,] services[,] or other tangible or intangible property, . . . that is initiated or completed in [Utah]." *Id.* § 13-37-102(4)(a)(i).

~~21.~~90.   "Nonpublic personal information" means "information that . . . is not public information" and, "either alone or in conjunction with public information, identifies a person in distinction from other persons." *Id.* § 13-37-102(5)(a).   "Nonpublic personal information" expressly includes, *inter alia*, "the purchasing patterns of a person" or "the personal preferences of a person." *Id.* § 13-37-102(5)(b)(iii)-(iv).

~~22.~~91.   A commercial entity "is considered to have obtained information as a result of a consumer transaction if . . . the person provides the information to the commercial entity . . . at any time during the consumer transaction . . . and at the request of the commercial entity," or if "the commercial entity otherwise obtains the information . . . and but for the consumer transactions, the commercial entity would not obtain the information." *Id.* § 13-37-201(1)(b).

~~23.~~92.   Section 13-37-201 of the NISNPIA requires a commercial entity to provide the consumer with a notice, in the form set forth in that section, if "the commercial entity enters into a consumer transaction with that person[,]" "as a result of the consumer transaction . . . , the commercial entity obtains nonpublic personal information concerning that person[,] and "the commercial entity intends to or wants the ability to disclose the nonpublic personal information . . . to a third party . . . for compensation," where such compensation "is the primary consideration for the commercial entity disclosing the nonpublic personal information," is "directly related to the commercial entity disclosing the nonpublic personal information," and "is not compensation received by the commercial entity in consideration of a transaction [wherein a third party provides the commercial entity with: "(i) services, including business outsource services; (ii) personal or real property; or (iii) other thing

24

of value"])." *Id.* § 13-37-201(1)(a); § 13-37-201(5) .

24.93.   The notice required by section 13-37-201 of the NISNPIA "shall read substantially as follows: 'We may choose to disclose nonpublic personal information about you, the consumer, to a third party for compensation.' )." *Id.* § 13-37-201(3)(a).  The notice may be provided either "orally, if the consumer transaction itself is entirely conducted orally[,] or . . . in writing, if the notice is written in dark bold." *Id.* § 13-37-201(3)(b).  In either case, the notice "shall be sufficiently conspicuous so that a reasonable person would perceive the notice before providing the nonpublic personal information." *Id.* § 13-37-201(3)(c). The notice "shall be given before the earlier of . . . the point at which the person is requested to provide the nonpublic personal information[] or . . . the commercial entity otherwise obtains the nonpubllic personal information as a result of the consumer transaction[.]" *Id.* § 13-37-201(2).

25.94.   The NISNPIA entitles consumers who suffer violations of the statute to recover, *inter alia*, "$500 for each time the commercial entity fails to provide the notice required by this section in relation to the nonpublic personal information of the person who brings the action." *Id.* § 13-37-203.

26.95.   Despite the fact ~~that~~Mrs. Fields has initiated or completed thousands of ~~consumers have purchased Mrs. Fields's~~ sales of its products in Utah, Mrs. Fields disregarded its legal responsibility to ~~these individuals~~its customers by systematically violating the NISNPIA.

### The Private Information Market:
### Consumers' Private Information Has Real Value

27.96.   In 2001, Federal Trade Commission ("FTC") Commissioner Orson Swindle remarked that "the digital revolution . . . has given an enormous capacity to the acts of collecting

and transmitting and flowing of information, unlike anything we've ever seen in our lifetimes . . . [and] individuals are concerned about being defined by the existing data on themselves."[1]

28.97.   More than two decades later, Commissioner Swindle's comments ring truer than ever, as consumer data feeds an information marketplace that supports a $26 billion dollar per year online advertising industry in the United States.[2]

29.98.   The FTC has also recognized that consumer data possesses inherent monetary value within the new information marketplace and publicly stated that:

> Most consumers cannot begin to comprehend the types and amount of information collected by businesses, or why their information may be commercially valuable. Data is currency. The larger the data set, the greater potential for analysis—and profit.[3]

30.99.   In fact, an entire industry exists while companies known as data aggregators purchase, trade, and collect massive databases of information about consumers.  Data aggregators then profit by selling this "extraordinarily intrusive" information in an open and largely unregulated market.[4]

---

[1]      **Exhibit B**, The Information Marketplace:  Merging and Exchanging Consumer Data (Mar. 13, 2001), at 8:15-11:16, *available at* https://www.ftc.gov/sites/default/files/documents/public_events/information-marketplace-merging-and-exchanging-consumer-data/transcript.pdf (last visited July 30, 2021).

[2]      *See* **Exhibit C**, Web's Hot New Commodity: Privacy, WSJ (Feb. 28, 2011), http://online.wsj.com/article/SB10001424052748703529004576160764037920274.html      (last visited July 30, 2021).

[3]      **Exhibit D**, Statement of FTC Commissioner Pamela Jones Harbour (Dec. 7, 2009), at 2, *available at* https://www.ftc.gov/sites/default/files/documents/public_statements/remarks-ftc-exploring-privacy-roundtable/091207privacyroundtable.pdf (last visited July 30, 2021) (emphasis added).

[4]      *See* **Exhibit E**, Martha C. White, *Big Data Knows What You're Doing Right Now*, TIME.com (July 31, 2012), http://moneyland.time.com/2012/07/31/big-data-knows-what-youre-doing-right-now/ (last visited July 30, 2021).

31.100.  The scope of data aggregators' knowledge about consumers is immense: "If you are an American adult, the odds are that [they] know[] things like your age, race, sex, weight, height, marital status, education level, politics, buying habits, household health worries, vacation dreams—and on and on."[5]

32.101.  Further, "[a]s use of the Internet has grown, the data broker industry has already evolved to take advantage of the increasingly specific pieces of information about consumers that are now available."[6]

33.102.  Recognizing the serious threat the data mining industry poses to consumers' privacy, on July 25, 2012, the co-Chairmen of the Congressional Bi-Partisan Privacy Caucus sent a letter to nine major data brokerage companies seeking information on how those companies collect, store, and sell their massive collections of consumer data.[7]

34.103.  In their letter, the co-Chairmen recognized that "[b]y combining data from numerous offline and online sources, data brokers have developed hidden dossiers on every U.S.

---

[5]  **Exhibit F**, Natasha Singer, *You for Sale: Mapping, and Sharing, the Consumer Genome*, N.Y. Times (June 16, 2012), *available at* https://www.immagic.com/eLibrary/ARCHIVES/GENERAL/GENPRESS/N120616S.pdf (last visited July 30, 2021).

[6]  **Exhibit G**, Letter from Senator John D. Rockefeller IV, Chairman, Senate Committee on Commerce, Science, and Transportation, to Scott E. Howe, Chief Executive Officer, Acxiom (Oct. 9, 2012) *available at* http://www.commerce.senate.gov/public/?a=Files.Serve&File_id=3bb94703-5ac8-4157-a97b-a658c3c3061c (last visited July 30, 2021).

[7]  *See* **Exhibit H**, *Bipartisan Group of Lawmakers Query Data Brokers About Practices Involving Consumers' Personal Information*, Website of Senator Ed Markey (July 24, 2012), http://www.markey.senate.gov/news/press-releases/bipartisan-group-of-lawmakers-query-data-brokers-about-practices-involving-consumers-personal-information (last visited July 30, 2021).

consumer," which "raises a number of serious privacy concerns."[8]

35.104.  Data aggregation is especially troublesome when consumer information is sold to direct-mail advertisers.  In addition to causing waste and inconvenience, direct-mail advertisers often use consumer information to lure unsuspecting consumers into various scams,[9] including fraudulent sweepstakes, charities, and buying clubs.  Thus, when companies like Mrs. Fields share information with data aggregators, data cooperatives, and direct-mail advertisers, they contribute to the "[v]ast databases" of consumer data that are often "sold to thieves by large publicly traded companies," which "put[s] almost anyone within the reach of fraudulent telemarketers" and other criminals.[10]

36.105.  Information disclosures like those made by Mrs. Fields are particularly dangerous to the elderly.  "Older Americans are perfect telemarketing customers, analysts say, because they are often at home, rely on delivery services, and are lonely for the companionship that telephone callers provide."[11]  The FTC notes that "[t]he elderly often are the deliberate targets of fraudulent telemarketers who take advantage of the fact that many older people have cash reserves or other assets to spend on seemingly attractive offers."[12]  Indeed, an entire black market exists where the

---

[8]      *Id.*

[9] *See* **Exhibit I**, *Prize Scams*, Federal Trade Commission, http://www.consumer.ftc.gov/articles/0199-prize-scams (last visited July 30, 2021).

[10]     **Exhibit J**, Charles Duhigg, *Bilking the Elderly, With a Corporate Assist*, N.Y. Times, May 20, 2007, *available at* http://www.nytimes.com/2007/05/20/business/20tele.html (last visited July 30, 2021).

[11]      *Id.*

[12]     **Exhibit K**, *Fraud Against Seniors:  Hearing before the Senate Special Committee on Aging*://www.ftc.gov/sites/default/files/document (August 10, 2000) (prepared statement of the FTC), *available at* https://www.ftc.gov/sites/default/files/documents

private information of vulnerable elderly Americans is exchanged.

~~37.~~106.  Thus, information disclosures like Mrs. Fields's are particularly troublesome because of their cascading nature: "Once marked as receptive to [a specific] type of spam, a consumer is often bombarded with similar fraudulent offers from a host of scam artists."[13]

~~38.~~107.  Mrs. Fields is not alone in jeopardizing its customers' privacy and well-being in exchange for increased revenue: disclosing customer information to data aggregators, data appenders, data cooperatives, direct marketers, and other third parties is a widespread practice in the consumer-products industries.

~~39.~~108.  Thus, as consumer data has become an ever-more valuable commodity, the data mining industry has experienced rapid and massive growth.  Unfortunately for consumers, this growth has come at the expense of their most basic privacy rights.

### Consumers Place Monetary Value on their Privacy and Consider Privacy Practices When Making Purchases

~~40.~~109.  As the data aggregation and cooperative industry has grown, so too have consumer concerns regarding the privacy of their information.

~~41.~~110.  A recent survey conducted by Harris Interactive on behalf of TRUSTe, Inc. showed that 89 percent of consumers polled avoid doing business with companies who they believe do not protect their privacy online.[14]  As a result, 81 percent of smartphone users polled

---

s/public_statements/prepared-statement-federal-trade-commission-fraud-against-seniors/agingtestimony.pdf (last visited July 30, 2021).

[13]     *See id.*

[14]     *See* **Exhibit L**, *2014 TRUSTe US Consumer Confidence Privacy Report*, TRUSTe, http://www.theagitator.net/~~wp-content~~wpcontent/uploads/012714_ConsumerConfidenceReport_US1.pdf (last visited July 30, 2021).

said that they avoid using smartphone apps that they don't believe protect their privacy online.[15]

42.111.  Thus, as consumer privacy concerns grow, consumers are increasingly incorporating privacy concerns and values into their purchasing decisions and companies viewed as having weaker privacy protections are forced to offer greater value elsewhere (through better quality and/or lower prices) than their privacy- protective competitors.

43.112.  In fact, consumers' private information has become such a valuable commodity that companies are beginning to offer individuals the opportunity to sell their information themselves.[16]

44.113.  These companies' business models capitalize on a fundamental tenet underlying the consumer information marketplace: consumers recognize the economic value of their private data.  Research shows that consumers are willing to pay a premium to purchase services from companies that adhere to more stringent policies of protecting their data.[17]

45.114.  Thus, in today's economy, individuals and businesses alike place a real, quantifiable value on consumer data and corresponding privacy rights.[18]

---

[15]    *Id.*

[16]    *See* **Exhibit M**, Joshua Brustein, *Start-Ups Seek to Help Users Put a Price on Their Personal Data*, N.Y. Times (Feb. 12, 2012), *available at* http://www.nytimes.com/2012/02/13/technology/start-ups-aim-to-help-users-put-a-price-on-their-personal-data.html (last visited July 30, 2021).

[17]    *See* **Exhibit N**, Tsai, Cranor, Acquisti, and Egelman, *The Effect of Online Privacy Information on Purchasing Behavior*, 22(2) Information Systems Research 254, 254 (2011); *see also* European Network and Information Security Agency, *Study on monetising privacy* (Feb. 27, 2012), *available at* https://www.enisa.europa.eu/activities/identity-and-trust/library/deliverables/monetising-privacy (last visited July 30, 2021).

[18]    *See* **Exhibit O**, Hann, *et al.*, *The Value of Online Information Privacy: An Empirical Investigation* (Oct. 2003) at 2, *available at* http://citeseerx.ist.psu.edu/viewdoc/download?doi=10.1.1.321.6125&rep=rep1&type=pdf (last

***Mrs. Fields Unlawfully Rents, Sells, Exchanges, and Otherwise Discloses for Compensation Its Customers' Private Purchase Information***

115.    Mrs. Fields maintains a vast digital database comprised of its customers' Private Purchase Information.

46.116. Mrs. Fields discloses for compensation its customers' Private Purchase Information to data aggregators and appenders, who then supplement that information with additional sensitive private information about each Mrs. Fields customer, including his or her gender and the dollar amount of the products purchased. (*See, e.g.*, **Exhibit A**). The "enhanced" customer lists that Mrs. Fields receives back from the data aggregators and data appenders – in exchange for allowing the data aggregators and appenders to use Mrs. Fields's customer lists for their own independent business purposes – are more valuable to Mrs. Fields than its original customer lists, because the lists that are "enhanced" with the additional information about each customer added by the data appenders and aggregators can be sold or rented by Mrs. Fields to other third parties for more money, or can be exchanged to other third parties on better terms (discussed further below), than its original customer lists. In this way, Mrs. Fields is able to increase its profits gained from its sales, rentals and exchanges of its customer lists.

117.    Mrs. Fields then rents and/or otherwise discloses for compensation its mailing also discloses for compensation its customers' Private Purchase Information to data cooperatives, who in turn disclose or otherwise make available to Mrs. Fields their own customer list databases. These third-party customer list databases contain information that is valuable to Mrs. Fields, as they enable Mrs. Fields to identify prospective customers (i.e., "prospects") to whom it can send advertisements and other offers to sell its tangible and/or intangible property,

---

visited July 30, 2021) ("The real policy issue is not whether consumers value online privacy. It is obvious that people value online privacy.").

and with whom it can ultimately enter into consumer transactions with and generate revenue from.

47.118.  Additionally, Mrs. Fields sells, rents, exchanges, and/or otherwise discloses for compensation its customer lists—which include all of its customers' Private Purchase Information, identifying which individuals purchased Mrs. Fields's products, and can include the sensitive information obtained from data aggregators and appenders—to other data aggregators and appenders, other consumer-facing businesses, non-profit organizations seeking to raise awareness and solicit donations, and to political organizations soliciting donations, votes, and volunteer efforts. (*See* **Exhibit A**).numerous other third parties, including other consumer-facing companies, direct-mail advertisers, and organizations soliciting monetary contributions, volunteer work, and votes. (*See* **Exhibit A**). In the case of exchanges, Mrs. Fields exchanges its customer lists (which contain all of its customers', including each of the Plaintiffs' and Class members', Private Purchase Information) to other companies in exchange for lists containing the private purchase information of those third-party companies' customers; these third-party customer lists contain information that is valuable to Mrs. Fields, as Mrs. Fields uses the lists to identify prospective customers (i.e., "prospects") to whom it can send advertisements and other offers to sell its tangible and/or intangible property, and with whom it can ultimately enter into consumer transactions with and generate revenue from.

48.   Mrs. Fields also discloses for compensation its customers' Private Purchase Information to data cooperatives, who in turn give Mrs. Fields access to their own mailing list databases.

49.119.  As a result of Mrs. Fields's data compiling and sharing practices, companies can purchase, rent, exchange for, or otherwise obtain mailingcustomer lists from Mrs. Fields that

identify Mrs. Fields's customers by their most intimate details, including their gender and the dollar amount of the products purchased.  Mrs. Fields's disclosures of such sensitive and private information puts consumers, especially the more vulnerable members of society, at risk of serious harm from scammers.

50.120.  Mrs. Fields fails to provide prior notice of these disclosures to its customers as required by Utah Code Ann. 13-37-201, much less obtain its customers' consent prior to making such disclosures, and its customers remain unaware that their Private Purchase Information and other sensitive information is being rented, sold, exchanged, and otherwise disclosed for compensation on the open market.

51.121.  Consumers purchaseSince January 1, 2004, Mrs. Fields has offered its products for sale through various sales channels, including in its catalogs and on its website, and over that time consumers have purchased Mrs. Fields's products through numerous media outletschannels, including the Internet, telephone, orand traditional mail.  Regardless of how a consumer has made a purchase, since January 1, 2004 Mrs. Fields has not required the consumer makes a purchase, Mrs. Fields does not require the individual to read or affirmatively agree to any terms of service, privacy policy, or information-sharing policy. before making a purchase.  Consequently, Mrs. Fields has uniformly failsfailed to provide the notice required by Utah Code Ann. 13-37-201 to  much less obtained any form of consent from any of its customers before they made their purchases or before Mrs. Fields discloses  much less obtained any form of its customers' consent – before it disclosed their Private Purchase Information to third parties for compensation.

52.122.  As a resultThus, during the applicable statutory period, Mrs. Fields disclosed all

33

of its customers' Private Purchase Information to ~~anybody~~numerous third parties who were willing to pay for it (or to provide other consumers' personal data in exchange for it), without so much as providing advance notice to its customers of these practices.

~~53.~~123.  By and through these actions, Mrs. Fields has disclosed to third parties its customers' Private Purchase Information ~~for compensation without providing the requisite prior notice of such disclosures,~~ in direct violation of the NISNPIA.

## CLASS ACTION ALLEGATIONS

~~54.~~124.    Plaintiffs seek to represent a class defined as all persons in the United States who, at any point during the applicable statutory period, had their Private Purchase Information, obtained by ~~Defendant~~Mrs. Fields on or after January 1, 2004 as a result of a consumer transaction, disclosed to a third ~~parties~~party by Mrs. Fields (the "Class").  Excluded from the Class is any entity in which ~~Defendant~~Mrs. Fields has a controlling interest, and officers or directors of ~~Defendant.~~Mrs. Fields.

~~55.~~125.    Members of the Class are so numerous that their individual joinder herein is impracticable.  On information and belief, members of the Class number in the thousands.  The precise number of Class members and their identities are unknown to Plaintiffs at this time but may be determined through discovery.  Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of ~~Defendant.~~Mrs. Fields.

~~56.~~126.    Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members.  Common legal and factual questions include, but are not limited to: (a) whether Mrs. Fields is a "commercial entity" within the meaning of the NISNPIA; (b) whether Mrs. Fields provided the notice required by the

34

NISNPIA to Plaintiffs and Class members before they entered into consumer transactions with ~~Defendant; (c) whether Defendant~~Mrs. Fields; (c) whether Mrs. Fields obtained Plaintiffs' and Class members' Private Purchase Information as a result of consumer transactions, and whether such information constitutes "nonpublic personal information" within the meaning of the NISNPIA; (d) whether ~~Defendant~~Mrs. Fields intended or wanted to disclose for compensation Plaintiffs' and the Class's Nonpublic Private Information to third parties at the time it entered into consumer transactions with Plaintiffs and the Class members; (e) whether ~~Defendant~~Mrs. Fields disclosed Plaintiffs' and Class members' Private Purchase Information to a third party; (f) whether the compensation ~~Defendant~~Mrs. Fields received for disclosing Plaintiffs' and the Class members' Private Purchase Information was the primary consideration for its disclosures of such information, and was directly related to its disclosures of such information; and (g) whether Mrs. Fields's disclosures of Plaintiffs' and the Class's Private Purchase Information to third parties violated the NISNPIA.

~~57.~~127.    The claims of the named Plaintiffs are typical of the claims of the Class in that the named Plaintiffs and the Class suffered invasions of their statutorily protected right to privacy (as afforded by the NISNPIA) as a result of ~~Defendant's~~Mrs. Fields's uniform wrongful conduct, based upon ~~Defendant's~~Mrs. Fields's disclosures of Plaintiffs' and the Class's Private Purchase Information.

~~58.~~128.    Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the Class members they seek to represent, they have retained competent counsel experienced in prosecuting class actions, and they intend to prosecute this action vigorously.  The interests of Class members will be fairly and adequately protected by

Plaintiffs and their counsel.

59.129.        The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class members.  Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's Mrs. Fields's liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's Mrs. Fields's liability.  Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

*[This Space Intentionally Left Blank]*

**CAUSE OF ACTION**
**Violation of Utah's Notice of Intent to Sell**
**Nonpublic Personal Information Act**
**(Utah Code Ann. § 13-37)**

60.130.        Plaintiffs repeat the allegations contained in the foregoing paragraphs as if fully set forth herein.

61.131.        Plaintiffs brings bring this claim individually and on behalf of the members of the Class against Defendant Mrs. Fields. Mrs. Fields.

62.132.        Mrs. Fields maintains its headquarters and principal place of business in Utah, and in the ordinary course of its business enters into transacts in consumer transactions

36

~~with consumers~~ in Utah.  Accordingly, Mrs. Fields is a "commercial entity" within the meaning of the NISNPIA.  *See* Utah Code Ann. § 13-37-102(2)(a).

133.    On or after January 1, 2004, each of the Plaintiffs (and each of the Class members) purchased from Mrs. Fields cookies, snack-food products, and/or other consumer goods or services, which had been offered for sale to the Plaintiffs (and each of the Class members) by Mrs. Fields in its catalog and on its website (among other sales channels).

~~63.~~134.  Each of Mrs. Fields's sales of tangible and/or intangible property to each of the Plaintiffs~~, including cookies~~ (and ~~other snack food products, were~~each of the Class members) was initiated and/or completed in Utah, where ~~Defendant is~~at all relevant times Mrs. Fields was headquartered and principally ~~does~~did business, ~~and where it was located at the time it~~maintained and operated its consumer-facing e-commerce website and prepared and disseminated to consumers its product catalogs, made ~~such sales to Plaintiffs.~~offers to sell the tangible and/or intangible property at issue that Plaintiffs and Class members purchased, received and collected the money that Plaintiffs and Class members paid for their purchases, and fulfilled the orders made by Plaintiffs and Class members by sending to them the tangible and/or intangible property that they had purchased.  Accordingly, ~~Defendant~~Mrs. Fields entered into one or more "consumer transaction" with ~~Plaintiff~~each of the Plaintiffs and Class members within the meaning of the NISNPIA. *See id.* § 13-37-102(4)(a)(i).

~~64.~~135.  As a result of such consumer transactions, ~~Defendant~~Mrs. Fields obtained information pertaining to Plaintiffs and Class members that Plaintiffs and Class members provided at ~~Defendant's~~Mrs. Fields's request, and which ~~Defendant~~Mrs. Fields would not otherwise have obtained but for entering into such consumer transactions with Plaintiffs~~.~~ and Class members.

*See id.* § 13-37-201(1)(b). This information, referred to herein as Plaintiffs' and Class members' Private Purchase Information, included Plaintiffs' and Class members' "purchasing habits" and "personal preferences" within the meaning of the NISNPIA.

65.136.    At various times during the applicable statutory period, Mrs. Fields disclosed Plaintiffs' Private Purchase Information, which identified them as purchasers of Mrs. Fields's products, in at least three ways.

66.137.    First, Mrs. Fields disclosed mailingcustomer lists containing Plaintiffs'the Private Purchase Information of all of its customers, including that of each of the Plaintiffs and Class members, to data aggregators and data appenders, who then supplemented the mailingcustomer lists with additional sensitive information from their own databases, before sending the mailingcustomer lists back to Mrs. Fields. The "enhanced" customer lists that Mrs. Fields received back from the data aggregators and data appenders – in exchange for allowing the data aggregators and appenders to use Mrs. Fields's customer lists for their own independent business purposes – were more valuable to Mrs. Fields than its original customer lists, because the lists that were "enhanced" with the additional information about each customer added by the data appenders and aggregators could be sold or rented by Mrs. Fields to other third parties for more money, or could be exchanged to other third parties on better terms, than its original customer lists. In this way, Mrs. Fields was able to increase its profits gained from its sales, rentals and/or exchanges of its customer lists.

67.138.    Second, Mrs. Fields disclosed mailingcustomer lists containing Plaintiffs' and Class members' Private Purchase Information to data cooperatives, who in turn gave Mrs. Fields accessdisclosed or otherwise made available to Mrs. Fields their own mailingcustomer

38

list databases. These third-party customer list databases contained information that was valuable to Mrs. Fields, as they enabled Mrs. Fields to identify prospective customers (i.e., "prospects") to whom it could send advertisements and other offers to sell its tangible and/or intangible property, and with whom it could ultimately enter into consumer transactions with and generate revenue from.

68.139.    Third, Mrs. Fields rented, sold, exchanged, and/or otherwise disclosed its mailingcustomer lists containing Plaintiffs' and Class members' Private Purchase Information— including lists enhanced with additional information from data aggregators and appenders—to third parties, including other consumer-facing companies, direct-mail advertisers, and organizations soliciting monetary contributions, volunteer work, and votes. In the case of exchanges, Mrs. Fields exchanged its customer lists (which contained all of its customers', including each of the Plaintiffs' and Class members', Private Purchase Information) to other companies in exchange for lists containing the private purchase information of those third-party companies' customers; these third-party customer lists contained information that was valuable to Mrs. Fields, as Mrs. Fields used the lists to identify prospective customers (i.e., "prospects") to whom it could send advertisements and other offers to sell its tangible and/or intangible property, and with whom it could ultimately enter into consumer transactions with and generate revenue from.

69.    Because the mailing lists included the additional information from the data aggregators and appenders, the lists were more valuable, and Mrs. Fields was able to increase its profits gained from the mailing list rentals and/or exchanges.

70.140.    Defendant made each disclosure of Plaintiffs' Private Purchase Information, to each of the entities described in the preceding paragraphs, for compensation –

39

namely, money.either money or valuable (and sensitive) consumer data. Indeed, Mrs. Fields's disclosures of Plaintiffs' and the Class's Private Purchase Information were made to data aggregators, data appenders, data cooperatives, direct-mail advertisers, and organizations soliciting monetary contributions, volunteer work, and votes—all in order to increase Mrs. Fields's revenue's revenue and enhance the formidability of its advertising and sales practices.

71.141.        The information Mrs. Fields disclosed indicates Plaintiffs' namenames and addressaddresses, as well as the fact that they purchased Mrs. Fields's products, which was information not otherwise in the public domain. *See id.* § 13-37-102(5). Because the records or information disclosed by Mrs. Fields reveal Plaintiffs' "purchasing patterns" and "personal preferences," and "identif[y] [Plaintiffs] in distinction from other persons," the records or information DefendantMrs. Fields disclosed to third parties constitute "nonpublic personal information" within the meaning of the NISNPIA. *See id.* § 13-37-102(5).

72.142.        Plaintiffs and the members of the Class never consented to Mrs. Fields disclosing their Private Purchase Information to anyone.

73.143.        Worse yet, at no time did before entering into a consumer transaction with Mrs. Fields or providing Mrs. Fields with their Private Purchase Information did Plaintiffs or the members of the Class receive the notice required by Utah Code Ann. § 13-37-201. Specifically, prior to entering into a consumer transaction with Plaintiff and the Class members and obtaining Plaintiffs' and the Class members' Private Purchase Information, Mrs. Fields failed to provide Plaintiffs or members of the Class with a clear and conspicuous notice in dark bold writing (or orally), such that a reasonable person would perceive the notice, stating that "["[w]e may choose to disclose nonpublic personal information about you, the consumer, to a third party for

compensation~~.".~~ *Id.* § 13-37-201(3)(a).

~~74.~~144.        Mrs. Fields's disclosures of Plaintiffs' and the Class's Private Purchase Information were not made to third parties in "relat[ion] to the third part[ies] providing to ~~[Defendant]~~ . . .[Mrs. Fields] . . . services, including business outsource services[,] personal or real property[,] or other thing[s] of value," and the "compensation received by ~~[Defendant]~~[Mrs. Fields] as part of the transaction[s] [with third parties] [was not] received by ~~[Defendant]~~[Mrs. Fields] for or in consideration of such "third part[ies] providing to ~~[Defendant]~~[Mrs. Fields] [such] services, . . . personal or real property[,] or other thing[s] of value." *Id.* § 13-37-201(5).

~~75.~~145.        Mrs. Fields is not "subject to a federal law or regulation that governs the disclosure of nonpublic information to a third party," nor is Mrs. Fields "a covered entity as defined in 45 C.F.R. Parts 160 and 164." *See* Utah Code Ann~~.,~~. § 13-37-201(4).

~~76.~~146. By disclosing Plaintiffs' and the Class's Private Purchase Information to third parties for compensation, without providing prior notice to Plaintiffs or Class members as required by Utah Code Ann. § 13-37-201, Mrs. Fields violated Plaintiffs' and the Class's statutorily protected right to privacy in their nonpublic personal information pertaining to their consumer transactions, as afforded by the NISNPIA. *See id.* § 13-37-202(1) ("A commercial entity may not disclose nonpublic personal information that the commercial entity obtained on or after January 1, 2004, as a result of a consumer transaction if the commercial entity fails to comply with Section 13-37-201.").

~~77.~~147.        On behalf of themselves and the Class, Plaintiffs seek: (1) $500.00 per Plaintiff and each Class member, for each time Mrs. Fields failed to provide them the notice required by the NISNPIA in relation to their Private Purchase Information, pursuant to Utah Code

Ann. § 13-37-203(2)(a); and (2) costs pursuant to Utah Code Ann. § 13-37-203(2)(b).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seek

a judgment against ~~Defendant~~Mrs. Fields as follows:

A.   For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as representatives of the Class and Plaintiffs' attorneys as Class Counsel to represent the Class;

B.   For an order declaring that ~~Defendant's~~Mrs. Fields's conduct as described herein violated Utah's Notice of Intent to Sell Non-Public Information Act;

C.   For an order finding in favor of Plaintiffs and the Class on all counts asserted herein;

D.   For an award of $500.00 to Plaintiffs and each Class member, for each time Mrs. Fields failed to provide them the notice required by the NISNPIA in relation to their Private Purchase Information, as provided by the NISNPIA, Utah Code Ann. § 13-37-203(2)(a);

E.   For prejudgment interest on all amounts awarded; and

F.   For an order awarding Plaintiffs and the Class their reasonable attorneys' fees and expenses and costs of suit pursuant to Rule 23 and Utah Code Ann. § 13-37-203(2)(b).

## **JURY DEMAND**

Plaintiffs demand a trial by jury on all causes of action and issues so triable.

Dated: December 27, 2023.

~~Respectfully submitted,~~

**PETERS | SCOFIELD**
*A Professional Corporation*

42

/s/ David W. Scofield

DAVID W. SCOFIELD

and

*Local Counsel for Plaintiff and the Putative Class*

**HEDIN HALL LLP**
Frank S. Hedin (Pro Hac Vice App. Pending)* (Admitted Pro Hac Vice)
Arun G. Ravindran (Admitted Pro Hac Vice)

*Pro Hac Vice App. pending) Application Forthcoming*

Attorneys Counsel **for Plaintiff and the Putative Class**

## CERTIFICATE OF SERVICE

      The undersigned hereby certifies that he caused the foregoing **FIRST AMENDED CLASS ACTION COMPLAINT** to be filed with the Court through its CM/ECF system, this 25th day of December, 2023, which will serve copies hereof electronically on the following counsel registered for CM/ECF notification:

      Milo Steven Marsden-- marsden.steve@dorsey.com

      Maryann Bauhs-- bauhs.maryann@dorsey.com

      Michael Edward Rowe, III-- rowe.michael@dorsey.com

      Ashish Nagdev-- anagdev@sidley.com

      Arun Ravindran-- ARavindran@hedinhall.com


                        /s/ David W. Scofield